ELROD *v.* BROOM.

4-8721                                    217 S. W. 2d 246

Opinion delivered February 7, 1949.

*Cecil C. Talley, W. E. Phipps* and *Neva B. Talley,* for appellant.

*Ralph Morrow,* for appellee.

HOLT, J.  Mrs. Fannie L. Elrod died testate March 14, 1947.  She left surviving, one son, William E. Broom;

a daughter, Kathrine Elrod; two grandchildren, Bonnie Spoon and Woodrow Elrod, and a great-grandson, Charles Winston Jones. Mrs. Elrod (deceased) executed her will November 26, 1941, by the terms of which she directed: "First: I direct that all my just debts, funeral and testamentary expenses be paid out of my estate." She gave to her daughter, Kathrine Elrod, $25; to her granddaughter, Bonnie Spoon, $25; to her grandson, Woodrow Elrod, $5, and $15 to her great-grandson, Charles Winston Jones, and "in consideration of the love and affection I have for my son, William Ezra Broom, and recognizing the contributions which he has made to me from time to time during my life in cash and personal services, I hereby will, devise and bequeath unto him" certain town lots in San Leon, Texas, "Certificate No. 148, being a full pay certificate in the Peoples Building & Loan Association of Little Rock, Arkansas, for 33 shares, said shares being $25 denomination each, . . . all stock and other interest I may have in the First Federal Loan Association at Little Rock, Arkansas, which amounts to approximately $150 and accrued interest and dividends thereon, . . . all cash in all banks, together with all cash on deposit with the United States Government in any of its departments, which at this time amounts to approximately $327 in W. B. Worthen Company Bank, Little Rock, Arkansas, and $1,500 in the Postal Savings Department of the United States Government at the Post Office Department, Little Rock, Arkansas."

"I have made a distinction in the bequests which I have made to him and that which I make to Katherine Elrod who is my daughter. In further consideration of the fact that Katherine Elrod, my daughter, has been married for more than 25 years and has resided with her husband, B. E. Elrod, and has had the attention and support of her husband, said B. E. Elrod, I do not feel that she is entitled to share in my estate to the extent that William Ezra Broom is so entitled. In further consideration of that fact that James Earl Broom [a brother of appellee] worked and accumulated the estate which I am hereby leaving, and before his death ex-

pressed the desire that his own brother William Ezra Broom, in the event of my death, should receive said estate, it is that additional consideration which prompts me to make distinction in the bequests which I make to Mrs. Katherine Elrod and to William Ezra Broom.''

The present litigation involves the validity of this will and of certain alleged gifts presently considered, which appellants assert were made to them subsequent to the execution of the will.

It was appellants' contention (1) that the purported will was invalid for the reason that the testatrix, Mrs. Fannie L. Elrod, was induced to execute it through fear, duress and the undue' influence of her son, William Broom, to whom she gave the bulk of her estate; (2) that subsequent to the execution of the will, the testatrix made a valid gift to appellant, Bonnie Spoon, of the Peoples' Building & Loan Association stock, evidenced by Certificate No. 148, and the stock in the First Federal Loan Association of Little Rock, all to be used in the education of the testatrix's great-grandson, Charles Winston Jones; and (3) that she also made a valid gift to her daughter, Kathrine Elrod, of the Postal Savings deposit in the amount of $800, and a check for $341.12, on savings in the W. B. Worthen Company Bank.

The trial court upheld the validity of the will, found that the alleged gifts to Bonnie Spoon and Kathrine Elrod were invalid and entered a decree accordingly. This appeal followed.

(1)

Was the will valid? We hold that it was.

That Mrs. Elrod, the testatrix, was mentally competent at the time she made the will is not questioned.

Without attempting to detail the testimony on this issue, it suffices to say that after reading the evidence, we conclude that the findings and decree of the Chancellor are not against the preponderance of the testimony.

The evidence shows that the testatrix was competent and was not unduly influenced at the time she made her will. It was carefully prepared by a prominent

Little Rock attorney and embraced plausible reasons for the distribution of her property.

### (2) and (3)

As to the validity of the alleged gifts, we hold that the trial court was correct in holding these gifts invalid.

We have many times announced the rule as to the requisites required for a valid gift *inter vivos*. In the recent case of *Baugh* v. *Howze,* 211 Ark. 222, 199 S. W. 2d 940, we said. ''To constitute a valid gift *inter vivos* certain essential elements must be present, these include actual delivery of the subject-matter of the gift to the donee or to some one as agent or trustee for the donee, with a clear intent to make an immediate present and final gift beyond recall, and at the same time unconditionally releasing all future dominion and control by the donor over the property so delivered,'' and in *Bennett* v. *Miles, Administrator,* 212 Ark. 273, 205 S. W. 2d 451, we used this language:

''Gifts *inter vivos,* as well as *causa mortis,* to be effective as such, must be established by clear and convincing evidence and the elements essential to their validity must be proven as a whole by such evidence. In *Stifft* v. *W. B. Worthen Co.,* 176 Ark. 585, 3 S. W. 2d 316, we said: 'The elements necessary to constitute a valid gift *inter vivos* were stated by this court in *Lowe* v. *Hart,* 93 Ark. 548, 125 S. W. 1030, to the effect that the donor must be of sound mind, must actually deliver property to the donee, must intend to pass the title immediately, and the donee must accept the gift.' ''

The court found and decreed ''that Kathrine Elrod withdrew from the Post Office in Little Rock, Arkansas, on January 13, 1947, $800 of the Postal Savings of the deceased, and that on February 17, 1947, Kathrine Elrod withdrew from W. B. Worthen & Company, Bankers, on a check purported to be signed by the deceased, the sum of $341.12.

''The court doth further find that Bonnie Spoon took from the effects of the deceased Peoples' Building & Loan Association Stock Certificate No. 148, represent-

ing 33 shares, and First Federal Loan Association of Little Rock, Arkansas, shares of stock to the amount of $150; and that at the time the above named amounts were taken the deceased was mentally unbalanced and wholly incapacitated and unable to realize the nature of said transactions, and that the said Bonnie Spoon and Kathrine Elrod thus exerted undue influence against and to the disadvantage of the deceased testatrix in these transactions and in those amounts.

"The court doth further find that the said Fannie L. Elrod had accumulated and retained the above moneys for the purpose of caring for herself in her old age and last illness and for the purpose of paying her funeral expenses, and that the said Kathrine Elrod and Bonnie Spoon connived and conspired against the deceased in her last illness and at a time when she was wholly incapacitated for the purpose of taking the remainder of her estate, and that they did deplete said estate to such an extent that there is not now a sufficient amount to pay for doctor bills, hospital and burial expenses of the deceased," that the executor pay the bequests, that the Peoples' Building & Loan and First Federal Loan stock certificates are assets in the hands of the executor, directed judgment against Kathrine Elrod in the amount of $791.12, that the executor reduce to cash all assets of the estate, pay claims and costs, with any balance to revert to William Ezra Broom," etc.

After a careful review of all the competent testimony, and without detailing it here, we have concluded that appellants have, as indicated, failed to establish, by clear and convincing testimony, the validity of the gifts in question.

While some of the evidence is conflicting, we think it supports the findings and decree of the trial court, and accordingly, we affirm.