313 P.2d 421

FIRST NATIONAL BANK OF ARIZONA, a national banking association, Appellant,

v.

Charles E. BUTLER, as Trustee of the Estate of George Kenneth Henderson and Viola Henderson, his wife, individually, and George Kenneth Henderson, as surviving partner of the firm of Henderson & Roberts, Bankrupts, Appellee.

No. 6250.

Supreme Court of Arizona.
July 2, 1957.

362

Kramer, Roche & Perry, Phoenix, for appellant.

Gibbons, Kinney & Tipton, Phoenix, for appellee.

UDALL, Chief Justice.

The First National Bank of Arizona has appealed from a judgment entered against it in a suit brought by Charles E. Butler as trustee in bankruptcy and from an order denying appellant's motion for a new trial. The defendant-appellant will be referred to as the bank and the plaintiff-appellee as the trustee; the bankrupts will be referred to by their surnames.

The matter is submitted upon an agreed statement approved by the trial judge. These are the admitted facts stated in chronological order: In the year 1949 George Kenneth Henderson and Paul Roberts were copartners doing business under the firm and style name of Henderson and Roberts. The partnership sold automobiles in Casa Grande, and to finance the "floor planning" thereof they entered into a written "Automobile Dealer Agreement" with the above-named bank. Thereafter the partner Roberts died. The business was insolvent and the estate of Henderson and his wife Viola, individually, and Henderson as surviving partner of the partnership firm, were adjudicated bankrupts in the United States District Court for Arizona. Appellee Butler was duly appointed by the referee in bankruptcy as trustee of such bankrupts' estate.

The trustee gave and the bank admittedly received actual notice of this adjudication of bankruptcy and the appointment of appellee Butler as trustee thereof.

At the time this notice was given all of the automobile contracts assigned to the bank had been paid in full and the bank held the net sum of $2,845.41 in the "reserve" provided for in the dealers agreement. Thereafter the bank paid this entire sum to Henderson, the surviving partner, and Bertie Roberts, the surviving spouse of the deceased partner.

The bank seeks to justify its action in disbursing these funds to the survivors of the partnership, in the face of its knowledge of the adjudication of bankruptcy, on the grounds that the trustee did not procure a restraining order, injunction or other appropriate process against it, nor execute a bond or affidavit, as provided for in section 51–535, A.C.A.1939, 1952 Supp. (now section 6–269, A.R.S.). The pertinent part of this section reads as follows:

"Notice to any bank, doing business in this state, of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank * * * or shall execute to said bank * * * a bond, indemnifying said bank from any and all liability, loss, damage, costs and expenses, for and on account of the payment of such adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands on the books of said bank * * *."

The trial court in rendering judgment against the bank agreed with the contention of the trustee that this statutory provision had no application to the admitted facts of this case. The bank's sole assignment of error is that the trial court erred in entering such judgment and denying its motion for a new trial because (1) the claim of the trustee in bankruptcy to a bank account in the name of the bankrupts is an "Adverse Claim" within the meaning of the quoted statute, and (2) the account held by the bank under the "dealers reserve agreement" constitutes a "Deposit" within the meaning of this same section.

We agree with the trustee's contention that in order for the bank to set up the statute, supra, as a bar to the trustee's recovery in the instant case, it must show both factors to exist, i. e., "adverse claimant" and a "bank deposit"; in other words the showing of one factor alone would not suffice.

Can it be said, as a matter of law, that the trustee's assertion of a right to the funds held by the bank is an "Adverse Claim" within the meaning of the statute? We think not.

The Supreme Court of Alabama was confronted with a similar problem that

involved an incompetent depositor and his subsequently appointed guardian. Its statute is practically identical with ours. The original opinion in this case, Perdue v. State Nat. Bank, 254 Ala. 80, 47 So.2d 261, would sustain the bank's contention in the instant suit; however, on rehearing the court concluded its first decision was wrong. The purpose of the statute was discussed in these words:

"The Act is designed to apply to a case where the deposit stands on the books of the bank to the credit of one or more persons and where adverse claim to the deposit is made by a *stranger.*" 47 So.2d at page 264. (Emphasis supplied.)

The Alabama court then held that the guardian of a depositor was not a stranger or an "adverse claimant" to his ward's deposit.

Sec. 110 of 11 U.S.C.A. states that upon his appointment and qualification, the trustee of the estate of a bankrupt shall be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding in bankruptcy. It was stated in the case of In re Scranton Knitting Mills, D.C., 21 F.Supp. 227, 228, that, "Persons dealing with an alleged bankrupt do so at their own risk, and this is as true of banks as of others." See, also, In re Fuller, 2 Cir., 294 F. 71.

Applying the above principles to the admitted facts of the instant case, it is our view that the trustee "stood in the shoes", so to speak, of the bankrupts, so he could hardly be considered a "stranger" to the account. We hold that the trustee was not an "adverse claimant" within the meaning of section 51–535, supra; hence, we find that this statute is nowise controlling.

Having reached this determinative conclusion, there appears to be no occasion for us to decide whether the funds held by the bank under the reserve agreement constitute a "deposit".

Judgment affirmed.

WINDES, PHELPS, STRUCKMEYER and LA PRADE, JJ., concurring.