**BANK OF MARIN, Appellant,**

v.

**John M. ENGLAND, Trustee in Bankruptcy in the matter of Marin Seafoods, Inc. and Eureka Fisheries, Inc., Appellee.**

No. 19776.

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1965.

Edgar B. Washburn, Freitas, Allen, McCarthy & Bettini, San Rafael, Cal., for appellant.

Thomas B. Donovan, Harold A. Block, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for appellee.

John P. Austin, Richard J. Archer, Paul E. Homrighausen, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for amicus curiae Calif. Bankers Association.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Bank of Marin appeals from a district court judgment affirming an order of a referee in bankruptcy holding the bank and Eureka Fisheries, Inc., jointly liable to a trustee in bankruptcy for the sum of $2,312.82. The sole question presented is whether a bank which honored checks of a depositor after the depositor had filed a voluntary petition in bankruptcy is liable to the trustee in bankruptcy for the amount of the checks paid where the bank had no notice of the bankruptcy proceeding.

The relevant facts are not in dispute. Between August 27, 1963, and September 17, 1963, Marin Seafoods drew and delivered five checks in favor of Eureka Fisheries upon its commercial account with Bank of Marin, San Rafael, California. The total amount of the checks was $2,318.82. On September 26, 1963,

before these checks had been presented to the bank for payment, Marin Seafoods filed a voluntary petition in bankruptcy. The petition was filed in the United States District Court for the Northern District of California, Southern Division. John M. England was appointed as receiver and so acted until October 20, 1963, at which time he became trustee for the bankrupt.

On the date of the filing of the petition, sums of money in excess of $3,200 were due and owing Marin Seafoods from customers for merchandise previously delivered. Beginning on the day after the filing of the petition, and continuing for several days, Marin Seafoods, through its principal officer, collected portions of these outstanding accounts receivable and deposited them in the company's commercial account at the bank. On October 2, 1963, the checks which Marin Seafoods had drawn and delivered to Eureka Fisheries prior to the filing of the petition, were duly presented to the bank by Eureka Fisheries for payment, and were paid.

At the time the bank paid these checks it had received no notice, and had not otherwise obtained knowledge of the filing of the petition in bankruptcy. The bank was not informed of the pending bankruptcy proceeding until October 3, 1963, when it received a letter, dated October 2, 1963, from the receiver. This was one day after the bank had honored the checks referred to above.

Proceeding under section 2, sub. a of the Bankruptcy Act (Act), 52 Stat. 842 (1938), as amended, 11 U.S.C. § 11, sub. a (1964), the trustee applied to the referee for a turnover order. The trustee sought to require the bank to pay over to the trustee a sum of money equivalent to the sum paid by the bank to Eureka Fisheries on October 2, 1963. In the alternative he sought relief against Eureka Fisheries. A show cause proceeding ensued, resulting in the entry of an order by the referee, supported by findings of fact and conclusions of law. The referee determined that the bank and Eureka Fisheries were jointly liable to the trus-

tee for the sum of $2,312.82, the amount paid by the bank to Eureka Fisheries.

In so ruling, the referee held that the bank's lack of knowledge of the filing of the voluntary petition in bankruptcy by its depositor Marin Seafoods, afforded the bank no protection. Eureka Fisheries paid the total amount of $2,312.82 to the trustee and then filed with the bankruptcy court, and served upon the bank, a demand for contribution. The bank petitioned for a review of the referee's order, and on such review, that order was affirmed. This appeal by Bank of Marin followed.

In seeking recovery of the stated amount from the bank, the trustee relied upon section 70, sub. a of the Act, 52 Stat. 879 (1938), as amended, 11 U.S.C. § 110, sub. a (1964). This section provides, in pertinent part, that, upon his appointment and qualification, a trustee in bankruptcy shall be vested "by operation of law" with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding in bankruptcy, with exceptions not here material, to described kinds of property wherever located. Among the kinds of property so described, the statute includes:

"* * * (5) property, including rights of action, which prior to the filing of the petition he [bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: *Provided*, * * * [not here material]."

■ This provision of the Act, considered by itself, would appear to support the trustee's application for a turnover order against the bank. The bank, however, contends that notwithstanding this statute, it should be held that a bank is not liable to a trustee in bankruptcy when, in good faith, and without actual knowledge of the bankruptcy proceedings, it honors the checks of a bankrupt depositor in the regular course of business after the adjudication of bank-

ruptcy. As authority for this view, the bank cites Rosenthal v. Guaranty Bank & Trust Co., D.C.La., 139 F.Supp. 730, stating that the holding in that case is "determinative" of this appeal.[1]

In Rosenthal, on facts quite similar to those of the case before us, the court held that the proviso of section 70, sub. d (5) of the Act, 52 Stat. 882 (1938), 11 U.S.C. § 110, sub. d (5), providing that nothing in the Act " * * * shall impair the negotiability of currency or negotiable instruments * * * " protects a bank in such circumstances.[2]

■ As indicated by the introductory words of section 70, sub. d, all of that subsection applies only to transactions taking place during the interval, if any, between the filing of a petition in bankruptcy and the adjudication or the taking of possession by a receiver, whichever first occurs. But, in the case of voluntary petitions in bankruptcy, such as the one before us, there is no such interval, because the filing of a voluntary petition operates as an adjudication. Section 18, sub. b of the Act, 73 Stat. 109 (1959), 11 U.S.C. § 41, sub. b (1964). Therefore section 70, sub. d (5) of the Act, relied upon by the court in Rosenthal, can have no application here.[3]

■ Moreover, the presentation of a check to the drawee for payment, and the payment thereof, is not a negotiation of the check.[4] If it is not negotiation, an order declaring invalid the presentation and payment is not impairment of negotiation. Accordingly, the "negotiability" proviso of section 70, sub. d (5) has no application.[5]

■ We conclude that the "negotiability" proviso of section 70, sub. d (5) does not protect the Bank of Marin under the circumstances of this case.

1. It would perhaps have been better if the bank had referred to the Rosenthal case as "persuasive." In the judicial scheme of things, a district court decision which has not withstood the acid test of appellate review cannot be regarded as authoritative, much less dispositive of an appeal, but it may well be persuasive.

2. Section 70, sub. d(5) reads:
   "(d) After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—
   * * * * *
   "(5) A person asserting the validity of a transfer under this subdivision shall have the burden of proof. Except as otherwise provided in this subdivision and in subdivision g of section 44 of this title, no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee: *Provided, however,* That nothing in this title shall impair the negotiability of currency or negotiable instruments."

3. Earlier cases in which banks were protected in paying checks all involved payments made after filing of the bankruptcy petition but prior to adjudication. See Citizens' National Bank v. Johnson, 6 Cir., 286 F. 527; Matter of Retail Stores Delivery Corp., D.C.N.Y., 11 F.Supp. 658.

4. See Shammas v. Boyett, 114 Cal.App.2d 139, 249 P.2d 880, 883; Fidelity & Deposit Co. of Maryland v. Marion Nat'l Bank, 116 Ind.App. 453, 64 N.E.2d 583; Aurora State Bank v. Hayes-Eames Elevator Co., 88 Neb. 187, 129 N.W. 279; First Nat'l Bank v. United States Nat'l Bank, 100 Or. 264, 197 P. 547, 555, 14 A.L.R. 479; Seligson, Creditors' Rights, 32 N.Y.U.L.Rev. 708, 730–31 (1957); 4 Collier, Bankruptcy § 70.68 at 1502–03 n. 3 (14th ed. 1964); Britton, Bills and Notes, 118 (2d ed. 1961). Similarly, a drawee bank which has paid the check does not become a holder in due course. Central Bank and Trust Co. v. General Finance Corp., 5 Cir., 297 F.2d 126, 128–29.

5. It should also be noted that Rosenthal was decided in 1956, which was prior to the enacting of section 18, sub. f of the Act, making the filing of a voluntary petition in bankruptcy an automatic adjudication. However, for the purpose of applying chapters I through VII of the Act, the court in Rosenthal treated the approval of the petition for reorganization under chapter X as equivalent to adjudication pursuant to section 102 of the Act, 52 Stat. 883 (1938), 11 U.S.C. § 502 (1964). We therefore do not regard the fact that Rosenthal was decided prior to the enactment of section 18, sub. f as a sound basis for distinguishing that case.

The bank also contends that, in California, a trustee in bankruptcy must give a bank notice of the bankruptcy by complying with section 952 of the California Financial Code before he can hold the bank liable for honoring checks of the bankrupt.

Section 952 provides that notice of an adverse claim to bank deposits may be disregarded until the adverse claimant obtains a restraining order, injunction or other court order against the bank; without such an order the bank may honor checks drawn by the depositor or allow withdrawals by him without incurring liability to the adverse claimant. The bank contends that since the Bankruptcy Act makes no provision for notice to banks, state law should apply to fill this gap. The trustee gave no notice in this case, nor did he make any attempt to comply with section 952.

■ A claim of this kind, made by the trustee in bankruptcy for a bankrupt depositor, is not an "adverse claim," within the meaning of such a statute. First National Bank of Arizona v. Butler, 82 Ariz. 361, 313 P.2d 421, 62 A.L. R.2d 1113. Thus, even overlooking inconsistencies between section 952 and the Bankruptcy Act,[6] the California statute does not undermine the district court order under review.

The bank further argues that a court of bankruptcy is governed by equitable principles and, applying those principles to this case, must protect the bank from incurring liability for honoring checks of a depositor where it had no notice of the bankruptcy of the depositor.

Under the trustee's theory of the case the bank must, in order to avoid liability, keep itself informed of the possibility of bankruptcy proceedings involving a depositor. According to the bank, this will require it to keep advised momentarily of bankruptcy filings. This burden is enhanced by the fact that filing in any district court in the United States will have the same effect. The steps demanded for protection are cited as impractical and otherwise burdensome.

■ The bank's dilemma is real since it is under a duty to depositors to honor checks which are validly drawn; at the same time there is always the possibility that the depositor, without the knowledge of the bank, has become the subject of bankruptcy proceedings. The hardship to the bank of keeping itself apprised of developments in the bankruptcy court is contrasted with the relatively light burden that a notice requirement would place upon the trustee. The trustee or receiver, upon filing, is informed of the bankrupt's accounts and deposits; and notification by him to the bank would be relatively simple.

The trustee, however, takes the position that there would be no great hardship resulting to banks from a ruling imposing liability in this case. It is argued that banks have a vital interest in the credit position of depositors and that banks are well equipped to evaluate, interpret and discover factors affecting the financial well-being of depositors. The trustee cites the reviewing of local legal publications as a method of keeping abreast of bankruptcies. Also the trustee feels that keeping posted outside the immediate area would not be an insurmountable burden. In addition, it is argued that the bank has assumed this risk of doing business and can easily pass the cost of surveillance on to its customers.

Upon considering the respective arguments, we think the bank makes out a strong case for hardship and impracticability insofar as the timely discovery of bankruptcy proceedings involving depositors is concerned. We are not as certain that the problem is one which threatens great and unprotectible financial liability. The fact that our case,

6. Section 70, sub. d of the Act removes protection from transactions where actual notice is present, while under section 952 the bank is protected even though there is actual notice if the remaining statutory steps have not been taken. The bank argues, however, that this inconsistent provision of section 952 is severable leaving "at least" a requirement of actual notice as a requisite to liability under section 952.

and Rosenthal, appear to be the only reported cases dealing with this particular problem is some indication that it is not one which will frequently confront banks. Moreover, it would seem that the risk, such as it is, may ordinarily be taken into account as a cost of the business and financed as such.

▆▆ It is true that courts of bankruptcy exercise certain equity powers.[7] But there is no room for equitable relief of a kind which is expressly foreclosed by the Act. Section 70, sub. d (5), quoted in note 2, above, specifically provides that "Except as otherwise provided in this subdivision and in subdivision g of section 44 of this title [section 21(g) of the Act] * * * " no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee.[8] Neither subdivision d of section 70, nor subdivision g of section 21, authorize transfers of the kind involved in this case. Equitable relief which would, as against the trustee, validate the bank's transfer to Eureka Fisheries, would thus run counter to section 70, subs. d, g, and is necessarily precluded.

The California Bankers Association, appearing in this court as *amicus curiae,* joins the bank in all of the contentions discussed above. It also presents the additional argument that the failure of the trustee to revoke the bankrupt's order for the payment of funds on deposit with the Bank of Marin bars the trustee from recovery against the bank.

The gist of this argument is as follows: (1) under section 70, sub. a (5) of the Act, a trustee in bankruptcy succeeds only to such rights as the bankrupt possessed at the time of the bankruptcy petition, and is subject to all defenses and equities which might have been asserted against the bankrupt but for the filing of that petition; (2) in California an ordinary depositor does not have title to any specific funds deposited in a bank, the relationship of bank and depositor, founded upon contract, being that of debtor and creditor; (3) under that contract, a bank has both the right and duty to honor checks of its depositors properly drawn and duly presented, unless the depositor provides the bank with notice of the revocation of his order for payment prior to the time his checks are accepted by the bank; (4) absent the giving of a timely "stop payment" order such payment operates to discharge the bank's obligation, and the depositor has no right to recover the amounts paid; and (5) under the premise set forth at the outset, the trustee is subject to the same defense.

▆ The bankruptcy of a drawer operates as a revocation of the drawee's authority.[9] Such revocation is not dependent upon or subject to notice to the drawee, since the trustee is immediately vested with the title of the bankrupt by operation of law. The parties to a depositor's contract with a bank are chargeable with knowing this when they enter into the contract. These circumstances constitute an implied exception to the contractual obligation of the bank to honor checks unless and until a "stop payment" notice is received. The asserted bank defense based upon lack of a "stop payment" notice is therefore not available against a trustee in bankruptcy in the case of the bankruptcy of the drawer.

Finally, both the bank and *amicus curiae* contend that the district court order under review deprives the bank of due process of law as guaranteed by the Fifth Amendment. Two aspects of this Constitutional argument are presented,

---

7. Section 2, sub. a of the Act, 52 Stat. 842, (1938), as amended, 11 U.S.C. § 11, sub. a; Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230.

8. The "negotiability" proviso to this subsection has already been discussed.

9. Harrison State Bank v. First National Bank, 116 Neb. 456, 218 N.W. 92; Guthrie Nat'l Bank v. Gill, 6 Okl. 560, 54 P. 434; Brady, Bank Checks, 25 (3rd ed. 1962).

the first being that the due process clause forbids imposing liability upon a bank unless it has received reasonable notice of the bankruptcy proceeding.

In support of this view, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, and several other decisions are cited. In Mullane, the question involved was whether adequate notice was given to a person of litigation wherein his rights were being litigated. Prior to the turnover proceedings, however, the rights of the Bank of Marin were not being adjudicated in the bankruptcy proceedings before us. Up to then, the rights of the bank were not affected by any order entered by the referee; the property of the bankrupt was vested in the trustee by operation of law. The rule as to notice set forth in Mullane and similar cases, is therefore inapplicable here.

In Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, also cited by the bank, the Court held a statute unconstitutional which imposed criminal liability not for an affirmative act, but for the failure of a convicted felon to register despite lack of notice of the requirement. Since the basis for the bank's liability to the trustee cannot be equated with the violation of a criminal statute, Lambert is not in point.

The bank also places reliance upon Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113. There, a creditor asserted that he had not been adequately notified of the filing and adjudication of a voluntary bankruptcy. But, as in Mullane and most of the other decisions cited by the bank, the rights of the creditor in Moyses were being adjudicated in the bankruptcy proceeding.

We do not believe that Moyses should be extended past its holding that the creditors of a bankrupt are entitled to reasonable notice of the bankruptcy pro-

ceedings.[10] The filing of a bankruptcy petition has long been regarded as a *caveat* to all the world. Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 46 L.Ed. 405. Likewise, adjudication has been held to be notice to the world, thus invalidating transactions involving the debtor's property occurring after adjudication. J. S. & J. F. Sterling, Inc. v. Birkhahn, 3 Cir., 30 F.2d 492, 495; 4 Collier, Bankruptcy, § 70.66 at 1498 (14th ed. 1964).

■ Congress may not proceed in complete disregard of the property rights of those dealing in good faith with bankrupts. It may, however, enact legislation balancing bankruptcy objectives with the interests of those dealing in good faith with a bankrupt. Section 70(d) of the Act, we believe, demonstrates that Congress has, in this balancing process, taken into account the latter interests and has accommodated them to the extent deemed feasible having in view the desirability of speedy, economical and effective bankruptcy administration.[11]

■ In our opinion, the order under discussion does not offend the due process clause, insofar as notice to the bank is concerned.

■ This brings us to the second facet of the Constitutional argument presented by the bank and *amicus curiae*. This is the contention that the due process clause prohibits imposing liability upon the bank because to do so would require the bank to pay a single debt twice. There is a strong Constitutional policy against requiring the double payment of the same debt. See Western Union Telegraph Co. v. Com. of Pennsylvania, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139.

■ The argument for the bank is premised upon these propositions: the relationship of a bank to its depositor is that of debtor and creditor; the bank is obligated to discharge its indebtedness

---

10. In Moyses it was held that the creditor had received sufficient notice.

11. See Lake v. New York Life Insurance Co., 4 Cir., 218 F.2d 394, 397–399; 4

Collier, Bankruptcy, §§ 70.66, 70.67, pages 1494–1501 (14th ed. 1964), commenting on the legislative history of section 70(d).

by honoring checks drawn by depositors; and failure to honor such checks results in liability to the depositor. These propositions are not challenged by the trustee for they are well established. Next the bank argues that in honoring the checks drawn by the bankrupt, it discharged its indebtedness in accordance with its obligation to its depositor. From this, the conclusion is drawn that to require a second payment now to the trustee is a violation of the Fifth Amendment.

As we have already seen, at the time the checks were honored, title to the deposits was vested in the trustee by virtue of section 70, sub. a. From the moment of filing the petition, the bank's duty with regard to the deposits was owed to the trustee, not to the bankrupt and not to the payee of the checks. We have already held that, in legal contemplation, the filing was sufficient notice to those subsequently dealing with the bankrupt's assets. Accordingly, and regardless of actual notice, the bank's obligation to honor the checks disappeared before it paid them. Therefore, in paying the checks when presented by Eureka Fisheries, the bank was not paying a debt for which it was obligated. It follows that if as a result of this judgment, the bank pays any part of the checks, it will not be paying the same debt twice.[12]

The bank characterizes its position as analogous to a garnishee who has paid his creditor without notice of garnishment. A garnishee is not liable to the garnishor in such circumstances. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023. But, the analogy is inapplicable in our case because, in bankruptcy proceedings, the filing of the petition and the adjudication is deemed notice to the world, except where the Act requires more specific notice.

Affirmed.

12. We express no opinion as to whether the bank will, in fact, have to pay any part of these checks. As noted above, the order ran against the bank and Eureka Fisheries jointly, and Eureka Fisheries

has paid the trustee the full amount of the checks in question. The rights as between the bank and Eureka Fisheries have yet to be determined.