446 P.2d 474

Margaret S. SAYLOR, Appellant,

v.

SOUTHERN ARIZONA BANK AND TRUST COMPANY, a corporation, Appellee.

No. 2 CA–CIV 510.

Court of Appeals of Arizona.

Oct. 30, 1968.

Rehearing Denied Dec. 10, 1968.

Review Denied Jan. 14, 1969.

William H. McBratney and Chandler, Tullar, Udall & Richmond, by Robert S. Tullar, Tucson, for appellant.

Holesapple, Conner, Jones, McFall & Johnson, by A. O. Johnson, Tucson, for appellee.

HATHAWAY, Chief Judge.

Margaret S. Saylor, plaintiff in the superior court, brought this action against the Southern Arizona Bank and Trust Company to recover the amount on deposit in a savings account which she alleged was held jointly by herself and Thomas E. Gilliland, deceased, with right of survivorship. She has appealed from a judgment against her and from the order denying her motion for a new trial.

Prior to May 26, 1965, Mr. Gilliland had a checking account and a savings account in the Southern Arizona Bank and Trust Company, the defendant. On that day, Mr. Gilliland and the plaintiff signed a signature card on which was indicated that both the checking account and the savings account were to be transferred to their joint ownership with right of survivorship. The normal Bank practice required that a separate signature card be signed for each account, but Mrs. Saylor and Mr. Gilliland were not aware of this requirement. Both boxes on the single card were checked by the printed words "checking account" and "savings account," but the Bank employees apparently ignored the marking. They recorded the transfer of the checking account, but did not record a transfer of the savings account. The same type of signature card was used for transfer of either checking or savings accounts, except the cards used for transfer of checking accounts had an additional, detachable, duplicated section. The card used here had this additional section and the Bank's employees apparently made the transfer on the basis of the appearance of the card rather than its content.

Though Mrs. Saylor wrote checks on the checking account, no changes or inquiries were made as to the savings account prior to Mr. Gilliland's death on September 24, 1965. At the time of his death, there was on deposit in the checking account the sum of $7,345.27 and in the savings account $114,920.20.

After Mr. Gilliland's death, the plaintiff withdrew the balance of the checking account, except for approximately $300. Demand was then made upon the defendant, by plaintiff's attorney, for the funds deposited in the savings account. The Bank's officers refused to turn over the funds stating that its records showed that the account had not been transferred from the sole ownership of Mr. Gilliland to joint ownership with the plaintiff, hence this lawsuit.

In her complaint, the plaintiff claimed ownership in the savings account and alleged that the defendant refused to acknowledge her ownership. The plaintiff alleged, as an alternative cause of action, that she was damaged through the defendant's negligence in handling the account. The defendant counterclaimed against the plaintiff and cross-claimed against the First National Bank of Arizona as administrator of the estate of the decedent, asking that the plaintiff and the administrator be required to interplead their respective claims. In so doing, the defendant asserted its willingness to pay out the funds in question pursuant to the direction of the court. The administrator of the decedent's estate cross-claimed against the defendant, claiming ownership of the savings account. It also counterclaimed against the plaintiff for the amount of both accounts, plus punitive damages, alleging that the plaintiff through the use of undue influence, menace and duress obtained Mr. Gilliland's signature on the card while he was mentally incompetent.

The cause was scheduled for trial to a jury. On the morning of the trial, the plaintiff and the administrator settled their differences on a fifty-fifty basis, i. e., the administrator agreed to drop its claim to the two accounts, and to let the plaintiff have the balances of both and the plaintiff agreed to pay over one half of the savings account. When the trial began the jury was waived and the cause proceeded to the court on the issues between the plaintiff and defendant, i. e., whether or not the de-

fendant was negligent in its handling of the attempted transfer of the savings account and whether such negligence was the proximate cause of the plaintiff's loss occasioned by the settlement, and the amount of damages, if any. Among its findings of fact the trial court found:

\* \* \* \* \* \*

"6. After the death of Mr. Gilliland, Mrs. Saylor was advised by the bank that the savings account had not been transferred to their joint ownership.

"7. When plaintiff first requested the Bank to transfer the savings account to her after the death of Mr. Gilliland, *Bank had reason to believe and did believe that the estate of Thomas Gilliland could and might assert a claim to the account.*

"8. Subsequently said estate did assert a claim to the account and demanded transfer to it by the Bank.

"9. Southern Arizona Bank was never directly advised by Mr. Gilliland as to what he intended to do in regard to the transfer of the accounts nor did Mr. Gilliland ever directly request any advice from the Bank as to how to proceed to transfer his accounts. Plaintiff at no time prior to the death of Mr. Gilliland ever made any claim to the accounts in question, nor ever attempted to withdraw any funds from the savings account on her signature. No inquiry was ever made of the Bank prior to Mr. Gilliland's death either by plaintiff or Mr. Gilliland of the status of the Gilliland savings account.

"10. *The actions of plaintiff and Mr. Gilliland coupled with their intent to transfer the account were effective to transfer to Mrs. Saylor a joint tenancy interest in the savings account* regardless of what the Bank did or did not do in connection with the keeping of its records or its manner of designation of the account.

"11. The basis for the administrator's claim as disclosed by its verified pleadings and the pretrial order on file herein was alleged incompetence of Gilliland,

fraud, duress and undue influence practiced by plaintiff, lack of intent of Gilliland to make a gift, lack of realization of Gilliland as to the nature of what he was doing, and lack of consideration. The claim of the estate of Thomas Gilliland was directed to both the savings account which was not recorded by the Bank as a joint account and the checking account which was recorded in the Bank records as a joint account.

"12. *The assertion of this claim by the estate was not a result of any acts or omissions of the Bank.*

"13. Plaintiff, Mrs. Saylor, has entered into an agreement with the estate of Thomas E. Gilliland whereby after the payment of Federal estate taxes and the legitimate claims against the estate of Thomas E. Gilliland, the balance of the savings account will be divided evenly.

"14. *The Southern Arizona Bank and Trust Co., was negligent only in that it failed to properly designate the Gilliland savings account in accordance with the apparent intent and desire of the depositor, but that such negligence was not a proximate cause of any claim to the Gilliland accounts by the estate* of Mr. Gilliland nor of any loss or damage to Plaintiff as claimed in this action." (Emphasis added)

On the basis of these findings, the trial court concluded that the real cause of the litigation was the claim of the administrator against the plaintiff, rather than the negligence of the defendant. Consequently, judgment was entered for the defendant and the plaintiff appealed.

The plaintiff contends on appeal that, had it not been for the defendant's negligent handling of the signature card, she would have been able to successfully withdraw the funds in the savings account as she did those in the checking account. She also asserts that there was never any evidence of fraud, mistake, duress, undue influence, or incapacity of Mr. Gilliland, and that the administrator's claim against her on those issues would have, in all probability, never

been raised if the defendant had not, because of its own negligence, caused this litigation and brought the administrator into it.

The settlement made with the administrator, she says, was occasioned by defendant's negligence in maintaining its records, rather than the administrator's claim against her. It was, therefore, a reasonable and prudent settlement and had the effect of mitigating the defendant's total liability. She asks for reversal of the judgment of the lower court and for remand to determine the exact amount of the settlement, the amount of attorney's fees, costs, and interest, and for direction to the trial court to enter judgment for the sum of these amounts.

■ Plaintiff's contentions are based upon the proposition that negligent maintenance of its records by the Bank so that an account is erroneously shown as that of a deceased depositor, when the records should indicate a joint tenancy account with right of survivorship, subjects it to liability for the full value of the account to both the decedent's estate and the surviving joint tenant. No authority is cited for this broad proposition, nor do we subscribe to it as a sound proposition of law. Ownership of a bank account is determined by the intent, actions, and competency of the depositor, Sheridan v. Kleemann, 75 Ariz. 319, 256 P.

2d 558 (1953); Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856 (1943), and the manner in which the Bank keeps its records is not conclusive proof of ownership, Brown v. Navarre, 64 Ariz. 262, 169 P.2d 85 (1946).

■ The Bank apparently could not have been held liable to the administrator if it had paid over to the plaintiff the entire amount on deposit in both accounts, A.R.S. §§ 6–267, subsec. A, 6–269, subsec. A,[1] unless it had actual notice of fraud, duress, or incompetency, First National Bank of Arizona v. Butler, 82 Ariz. 361, 313 P.2d 421, 62 A.L.R.2d 1113 (1957). We think there was sufficient justification, however, for the defendant's refusal to pay over in this case.

Though the trial court found that the accounts in fact were the property of the plaintiff, the passbook was never presented to the Bank for addition of the plaintiff's name during Mr. Gilliland's life and the evidence is in conflict as to whether the plaintiff ever informed the Bank, other than by checking both boxes on the signature card,[2] of her intent to transfer both the checking and the savings account into joint tenancy. The plaintiff was given one signature card for purposes of securing Mr. Gilliland's signature to effectuate the transfer. Mary Stillwell, assistant cashier, who attended to the plaintiff, testified that if the plaintiff

1. A.R.S. § 6–267 provides, in part:
    "A. Bank deposits may be made in the name of two or more persons, including minors, payable to either or any of them, or payable to either or any of the survivors or the sole survivor, and the deposits or any part thereof and any interest thereon, may be paid to or on order of any of the persons whether the other or others are living or not. The receipt, order or acquittance of the persons so paid is valid and sufficient release and discharge to the bank for any payments so made. The term 'deposits' includes certificates of deposit."
    A.R.S. § 6–269 provides, in part:
    "A. Notice to a bank doing business in this state of an adverse claim to a deposit standing on its books to the credit of any person is not effectual to cause the bank to recognize the adverse claimant unless the adverse claimant also

either procures a restraining order, injunction or other appropriate process against the bank from a court of competent jurisdiction wherein the person to whose credit the deposit stands is made a party and is served with summons, or executes to the bank, in form and with sureties acceptable to the bank, a bond indemnifying the bank from all liability, loss, damage, costs and expenses, on account of payment of the adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands on the books of the bank."

2. There is no evidence as to who made the check marks on the card but the implication is that the plaintiff did so since a Bank employee should have realized that it was not in keeping with Bank practice.

had requested that the savings account also be transferred she would have given her two signature cards.

In McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931) the following rule, which we believe applicable here, is set forth:

"Where a person deposits money in a savings bank to the credit of himself and another, and payable to the order of either or the survivor of them, with the intention of making a gift, such deposit vests in the donee a joint interest with the depositor in the fund, and upon the death of the depositor the survivor is entitled to the amount then on deposit. The controlling question always hinges upon whether the owner of the money intended to make a gift or whether the account was entered in joint form for other purposes. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the depositor, or it may be shown by his acts and the attendant circumstances.

Thus, under the foregoing rule, had the savings account been set up in unequivocal form, the survivorship aspect could have been defeated if Mr. Gilliland had been shown incompetent at the time the accounts were set up or if the account had been established as a result of undue influence.

The plaintiff's claim necessarily was based on the assumption that a valid gift was made. For such to have been accomplished, Mr. Gilliland would have to have been competent, Elrod v. Broom, 214 Ark. 548, 217 S.W.2d 246 (1949), and must have signed the signature card with the intent to transfer a joint tenancy interest, First National Bank of Portland v. Connolly, 172 Or. 434, 138 P.2d 613, 143 P.2d 243 (1943); Matthew v. Moncrief, 77 U.S. App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856 (1943), with the right of survivorship, to the plaintiff, acting voluntarily and not under fraud, duress, mistake, or undue influence, Kessler v. Williams, 136 Ind.App. 110, 198 N.E.2d 22 (1964). If the transfer were not accomplished under the foregoing conditions, no gift would have been created and the plaintiff would not have an interest in the savings account. In such case, she could not complain that she was damaged by anything the Bank may have done in connection with the maintenance of its account records. If, on the other hand, a gift were intended and accomplished, we do not believe it could be defeated due to the status of the banking records, Brown v. Navarre, supra.

The Bank's caution in refusing to turn the savings account over to the plaintiff is understandable under the circumstances of this case. The advanced age of Gilliland when his signature was given was deserving of attention. His competency and the question of possible duress was raised by the irregularity of the transfer. Mary Stillwell's testimony raises an inference that transfer of the checking account alone was contemplated, since only one signature card was issued and the savings book was not presented for processing. The short time in which the claimed transfer preceded Gilliland's death, considered with the transferee's status as an unrelated employee, may, also, have motivated the Bank.

Additionally, plaintiff's attorney made an avowal during the trial, in support of the reasonableness of the settlement, as follows:

"I am trying to think what I can avow. Frankly, I don't believe they would have come up with any [evidence of undue influence], because I believe my client and I know that the decedent's doctor was going to say he was perfectly capable. *But I don't know what investigation Mr. Lesher* [attorney for the administrator] *or his firm had made. I don't know what witnesses they might have come up with.* I had plenty of testimony to rebut it if they came up with any, but I can't tell you and can't avow what they would have come up with.

\* \* \* \* \* \*

"As far as I know and in debating the settlement *I had to face the possibility that they would come in with testimony in support of the allegations* [of fraud.

· duress and undue influence], *which I assume they would not have made idly in their pleadings."* (Emphasis added)

This avowal indicates that the settlement with the estate was prompted by the claim of undue influence rather than the errors in the Bank's records.

We conclude that the judgment of the trial court is supported by the evidence.

Affirmed.

DONOFRIO, J., and MARY ANNE RICHEY, Superior Court Judge, concur.

NOTE: Judges JOHN F. MOLLOY and HERBERT F. KRUCKER having requested that they be relieved from consideration of this matter, Judges FRANCIS J. DONOFRIO and MARY ANNE RICHEY were called to sit in their stead and participate in the determination of this decision.