[No. H000601. Sixth Dist. Apr. 11, 1986.]

AARTS PRODUCTIONS, INC., Plaintiff and Appellant, v.
CROCKER NATIONAL BANK et al., Defendants and Respondents.

**[Certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part V.

**COUNSEL**

James J. Reilly, Paul J. Slavit and Wilson & Slavit for Plaintiff and Appellant.

Mary Lynne Thaxter and Hoge, Fenton, Jones & Appel for Defendants and Respondents.

OPINION

**AGLIANO, Acting P. J.—**

I

In this case we determine that defendants Crocker Bank and its employees are not liable for wrongful dishonor of checks drawn against an account when the bank complies with its account agreement when faced with conflicting demands by the signatories on the account. We accordingly affirm the trial court's grant of summary judgment in favor of defendants.

II

*Scope of Review*

■■■ Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. (Code Civ. Proc., § 437c; *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224]; *Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 432 [186 Cal.Rptr. 357].) First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. (*Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148-149 [60 Cal.Rptr. 377, 429 P.2d 889]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 50 [46 Cal.Rptr. 552]; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 666 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].)

Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. (*Gardenswartz* v. *Equitable etc. Soc.* (1937) 23 Cal.App.2d Supp. 745, 751, 753-754 [68 P.2d 322]; *Kimber* v. *Jones* (1954) 122 Cal.App.2d 914, 919 [265 P.2d 922]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and cases there cited.) ■■■ The motion must stand self-sufficient and cannot succeed because the opposition is weak. (*de Echeguren* v. *de Echeguren*

(1962) 210 Cal.App.2d 141, 147-149 [26 Cal.Rptr. 562], and cases there cited; *Rowland* v. *Christian, supra,* at p. 111.) A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444]; *Miller* v. *Metzinger* (1979) 91 Cal.App.3d 31, 42 [154 Cal.Rptr. 22]; *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 638-640 [177 Cal.Rptr. 445].)

■ When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441-442 [116 P.2d 62], and cases there cited.) ■ Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 475 [33 Cal.Rptr. 661]; *Orser* v. *George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708]; *Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 648 [65 Cal.Rptr. 856]; *Johnson* v. *Canadian Transport Co.* (1976) 54 Cal.App.3d 827, 834 [127 Cal.Rptr. 72].) ■ A court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding (*Saporta, supra,* at p. 474; *Fisher* v. *Larsen* (1982) 138 Cal.App.3d 627, 634 [188 Cal.Rptr. 216]), unless admissions against interest have been made which justify disregard of any dissimulation. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573-574 [142 Cal.Rptr. 716], and cases there cited.) ■ A sufficient motion cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings. (*Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 656 [15 Cal.Rptr. 207]; *Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 635-636 [164 Cal.Rptr. 621], and cases there cited.)

### III

### *The Pleaded Issues*

Plaintiff AARTS Productions, Inc., assignee of AARTS Productions, alleged four causes of action against defendants Crocker National Bank and its employees, Julia Clauser and G. M. Atkins. The first cause of action alleged wrongful dishonor of several checks drawn on the association's account to pay its creditors. The second alleged the bank refused to allow plaintiff's assignors to make any withdrawals of almost $15,000 in the association's checking account. The third charged both these derelictions as a breach of the implied covenant of good faith and fair dealing. The fourth alleged conversion in that the bank had refused to deposit or return a cash-

ier's check for $314.30 made out to the association. Punitive damages were sought on each cause of action.

## IV

### A. *The Undisputed Facts*

In November 1981, a checking account was opened in the name of AARTS, later changed to AARTS Productions, an unincorporated association. As of April 28, 1982, there were four authorized signators on the account, William Johnson, Richard Williams, Mustafa Ansari, and Twyla Utley. The account agreement provided in part: "The Bank may . . . (c) if given conflicting certifications or demands, either deposit the balance in court or withhold payment from the account pending the joint order or receipt of all parties or an appropriate court order determining those authorized to sign, . . ."

On July 28, 1982, Twyla Utley requested the bank on association letterhead as its treasurer to honor no more checks drawn on this account because the checkbook was stolen. By letter dated August 27, 1982, Robert Landry, an attorney for Utley, notified the bank to confirm her request to freeze the association account and honor no checks due to pending litigation involving the account. On September 7, the bank offered to release all association funds to all signers of the account if they would receive them together. All but Twyla Utley refused this offer.

The bank subsequently filed a separate action in interpleader, depositing the association's funds in court, and it was discharged from said action by stipulation of all parties.

Within a week to a month after Utley's first notice was sent to the bank, the other signators, Johnson, Williams, and Ansari, informed the bank the checkbook had not been stolen, and demanded the bank honor checks drawn on the account. The bank dishonored several checks thereafter.

### B. *The Law on Wrongful Dishonor and Breach of the Implied Covenant*

Plaintiff concedes the bank's interpleader of the association's funds justifies the summary judgment on the second cause of action for recovery of the account, but insists there was wrongful dishonor.

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved." (Cal. U. Com. Code,

§ 4402.) ■■■ The issue here is whether the dishonor was wrongful. The bank contends the signature agreement authorized it in case of conflicting demands to withhold payment from the account pending a court order or joint order of the signatories. Plaintiff does not seriously contend otherwise, but argues the agreement must be read in light of the relevant provisions of the Financial Code.

"When the depositor of a commercial or savings account has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner, including checks drawn to his personal order and withdrawal orders payable to him personally, was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person." (Fin. Code, § 953.) Plaintiff argues this section allows it to assume checks would be paid, but defendants point out an exception when there is "written notice otherwise."[1] The written notices received by the bank allowed it to question the ostensible authority of the presenter of a check or withdrawal demand.

Plaintiff's main argument is the bank was required to ignore Utley's notices under Financial Code section 952, which states: "Notice to any bank of an adverse claim (the person making such adverse claim being hereinafter called 'adverse claimant') to a deposit standing on its books to the credit of or to personal property held for the account of any person shall be disregarded, and the bank, notwithstanding such notice, shall honor the checks, notes, or other instruments requiring payment of money by or for the account of the person to whose credit the account stands and on demand shall deliver any such property to, or on the order of, the person for whose account such property is held, without any liability on the part of the bank; subject, however, to the exceptions provided in subdivisions (a) and (b) of this section: [¶] (a) If an adverse claimant delivers to the bank at the office at which the deposit is carried or at which the property is held his affidavit stating that of his own knowledge the person to whose credit the deposit stands or for whose account the property is held is a fiduciary for the adverse claimant and that he has reason to believe such fiduciary is about to misappropriate the deposit or the property, and stating the facts on which such claim of fiduciary relationship and such belief are founded, the bank shall refuse payment of the deposit and shall refuse to deliver such property

---

[1]This dovetails with California Uniform Commercial Code section 4403, which allows a customer to stop payment on a check by a timely signed order in writing describing which payment should be stopped.

for a period of not more than three court days (including the day of delivery) from the date that the bank received the adverse claimant's affidavit, without liability on its part and without liability for the sufficiency or truth of the facts alleged in the affidavit. [¶] (b) If at any time, either before, after, or in the absence of the filing of an affidavit by the adverse claimant, the adverse claimant procures and serves upon the bank at the office at which the deposit is carried or at which the property is held a restraining order, injunction, or other appropriate order against the bank from a court of competent jurisdiction in an action in which the adverse claimant and all persons in whose names such deposit stands or for whose account such property is held are parties, the bank shall comply with such order or injunction, without liability on its part. [¶] (c) The provisions of this section shall be applicable even though the name of the person appearing on the bank's books to whose credit the deposit stands or for whose account the property is held is modified by a qualifying or descriptive term such as 'agent,' 'trustee,' or other word or phrase indicating that such person may not be the owner in his own right of the deposit or property."

Plaintiff's position is section 952 required the bank to disregard Utley's notices to stop payment because neither was backed by an affidavit or court order. The heart of this dispute is whether Utley was an "adverse claimant" under section 952 although an account signatory.

While some version of this statute has existed in California since 1932 (Stats. 1931, ch. 197, § 21, pp. 361-362), the parties have not cited nor have we found any California decision clarifying the scope of the phrase "adverse claimant."

We observe similar statutes have been adopted in a majority of the states, deriving from a model statute promulgated by the American Bankers Association. (See *Gendler* v. *Sibley State Bank* (N.D.Iowa 1945) 62 F.Supp. 805, 811; Annot., Construction, Application, and Effect of Statute Relating to Notice to Bank of Adverse Claim to Deposit (1958) 62 A.L.R.2d 1116, § 1.) ■ To promote the uniformity of a uniform law, we ordinarily adopt the construction it has been given in other jurisdictions unless it is manifestly erroneous. (*People's F. & T. Co.* v. *Shaw-Leahy Co.* (1931) 214 Cal. 108, 109 [3 P.2d 1012].)

■ What little authority exists on this question is unanimous in holding an account holder is not an adverse claimant for this statute's purposes. *Perdue* v. *State Nat. Bank* (1950) 254 Ala. 80 [47 So.2d 261, 264], determined the guardian of one of two joint depositors was not an adverse claimant as to the other depositor, because his ward's name appeared on the

bank's books as a depositor, so he was not a stranger to the account. *First National Bank of Arizona* v. *Butler* (1957) 82 Ariz. 361 [313 P.2d 421, 423], relied on *Perdue* to govern the disposition of a partnership's bank reserve. One partner died and his estate, along with the surviving partner, were adjudicated bankrupts. The bankruptcy trustee objected to the payment of the reserve to the surviving partner and the surviving spouse of the deceased partner. The court determined the trustee was not an adverse claimant or a stranger to the account since he stood in the shoes of the bankrupts. (See Annot., *supra,* 62 A.L.R.2d 1116, § 3.)

More recently, *Fortune* v. *City Nat. Bank & Trust Co.* (Okla.App. 1983) 671 P.2d 69, 72, gave the same answer without reference to this precedent. A dispute erupted between joint tenants in an account. The court reasoned neither one was an adverse claimant, because each had equal, unlimited access to the account.

We agree with this precedent and defendant bank's argument the purpose of Financial Code section 952 is to protect banks from getting caught in a crossfire between its depositors and strangers claiming entitlement to its accounts. (Cf. *Arizona Bank* v. *Wells Fargo Bank, N.A.* (Ariz.App. 1985) 713 P.2d 337, 339.) There is no comparable need for a statute to regulate the situation of conflicting demands between joint account holders, because it may be provided for, as here, by the account agreement. Absent an express legislative provision that an account holder may be an adverse claimant (compare *Arizona Bank, supra*), we hold the statute does not apply to disputes arising between joint depositors. Thus, summary judgment was properly granted on the first cause of action for wrongful dishonor.

While plaintiff asserts the existence of an implied covenant of good faith and fair dealing in the relationship between a bank and its customer (*Commercial Cotton Co.* v. *United California Bank* (1985) 163 Cal.App.3d 511, 516 [209 Cal.Rptr. 551]; see Cal. U. Com. Code, § 4103), plaintiff concedes the implied covenant would not require a bank to act inconsistently with its statutory or contractual obligations. Thus, summary judgment on the third cause of action follows its propriety on the first.

V*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1061.

## VI

The summary judgment is therefore affirmed.

Brauer, J., and Chang, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.