**In re SCRANTON KNITTING MILLS, Inc.**
No. 8882.

District Court, M. D. Pennsylvania.

Welles, Mumford, Stark & McGrath, of Scranton, Pa., for trustee.

W. L. Hill and Gunster, Mackie & Murphy, all of Scranton, Pa., for respondents.

WATSON, District Judge.

This is a petition for review of an order of the referee.

Involuntary petition in bankruptcy was filed against the bankrupt on November 5, 1934, naming the bankrupt as "Scranton Knitting Mills." On December 22, 1934, the court made an order permitting the name to be amended to "Scranton Knitting Mills, Inc." On the same day, an order of adjudication was entered.

On August 5, 1937, the trustee petitioned the referee for a rule on the Third National Bank & Trust Company (hereinafter referred to as "the bank") to show cause why it should not turn over to the trustee the sum of $15,196.11. Thereafter, the bank filed a motion to dismiss the trustee's petition on the ground that this court has no jurisdiction to entertain the trusee's petition in a summary proceedings. The referee entered an order denying the bank's motion. This order of the referee is now before the court for review.

A motion to dismiss a petition made under Equity Rule 29, 28 U.S.C.A. following section 723 must be decided on the basis of facts set forth in the petition alone. Scattergood v. American Pipe & Construction Co. (D.C.) 247 F. 712. Ignoring, therefore, the allegations of fact set forth in the motion to dismiss, and looking only to the facts alleged in the petition, the following facts are before the court:

At the time of the filing of the involuntary petition in bankruptcy against the "Scranton Knitting Mills" (November 5, 1934), the bank held on deposit to the credit of the Scranton Knitting Mills, Inc., the sum of $368.90. The bank acquired notice of the filing of the involuntary petition against the "Scranton Knitting Mills" on November 5, 1934, and, through its cashier, had actual knowledge of the proceedings. Also, through its officers and employees, it knew that the "Scranton Knitting Mills" and "Scranton Knitting Mills, Inc.," were one and the same corporation. Between the time of the filing of the petition in bankruptcy and November 26, 1934, there was deposited to the credit of the bankrupt in the bank the sum of $14,959.29, bringing the total deposits to $15,328.19, as of the date of adjudication. Of this amount, $51.-44 was deducted by the bank in payment of a dishonored check and $80.64 was turned over to the trustee, leaving a balance of $15,196.11. The bank has refused to account to the trustee for the amount last stated. There is nothing in the record to indicate what disposition, if any, was made of this sum.

The question before the court is whether these facts state a case sufficient to give this court jurisdiction to summarily order the bank to turn the balance unaccounted for over to the trustee.

The filing of an involuntary petition in bankruptcy "is a caveat to all the world, and in effect an attachment and injunction." Mueller v. Nugent, 184 U.S. 1, 14, 22 S.Ct. 269, 275, 46 L.Ed. 405. From the time of the filing of the petition to the appointment of a trustee, legal title to property remains in the bankrupt, but as trustee for all creditors. The bankrupt cannot effect any valid transfer of the property, except possibly for full value in the ordinary course of business. Gilbert's Collier on Bankruptcy (4th Ed.) 1169. During this period the property is considered to be in custodia legis, in the full possession and control of the court. The bankrupt's possession is the court's possession. Reed v. Barnett Nat. Bank (C.C.A.) 250 F. 983. Persons dealing with an alleged bankrupt do so at their own risk, and this is as true of banks as of others. In the interest of the free flow of commerce, however, many cases have held that a bank is not liable for money paid out in the ordinary course of business on checks drawn by the bankrupt before the bank knew of the bankruptcy proceedings. In re Retail Stores Delivery Corporation (D. C.) 11 F.Supp. 658, and cases cited.

In the case at bar, it is alleged that money belonging to the alleged bankrupt was deposited in the bank after the petition in bankruptcy was filed, and after the bank knew of the petition. Applying the principles outlined above, the money constitutes a trust fund in the constructive possession of the court, and the bank, just as the bankrupt itself, is accountable to the court for its disposition. It is well established that the proper method to secure such an accounting is by summary proceedings for a turnover order. Reed v. Barnett Nat. Bank (C.C.A.) 250 F. 983; In re Walker Grain Co. (Farmers' & Mechanics' Nat. Bank v. Wilkinson) (C.C. A.) 295 F. 120, appeal dismissed 266 U.S. 503, 45 S.Ct. 144, 69 L.Ed. 408; In re Times Square Auto Supply Co., Inc. (C. C.A.) 47 F.2d 210, certiorari denied 283 U.S. 856, 51 S.Ct. 649, 75 L.Ed. 1463. This is simply an application of the well-recognized principle that a bankruptcy court may deal summarily with all property in its possession, actual or constructive. Gilbert's Collier on Bankruptcy (4th Ed.) 482 et seq.

The bank seems to contend that a mere refusal to surrender constitutes an adverse holding in fact, and, therefore, an adverse claim when the petition was filed. With this contention I cannot agree.

The bank has not properly asserted that it had the right to possession of the money be reason of a claim adverse to the bankrupt, but, even if it had, the referee had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the bankruptcy petition. The referee would have been bound to enter upon that inquiry and, in doing so, would have acted within his jurisdiction. If his conclusion was that an adverse claim existed in fact, he should have declined to finally adjudicate on the merits and discharged the rule to show cause. If he erred in his ruling either way, his action would be subject to review. Mueller v. Nugent, supra.

It is not now necessary to decide what, if any, defenses the bank might assert in bar of a turnover order. All that is now before the court is whether the petition

presents a case calling for the exercise by this court of its summary jurisdiction. In my opinion it does.

Now, November 18, 1937, the order of the referee, dated September 9, 1937, is affirmed, and the petition for review is dismissed.