In the Matter of CAFES INTERNATIO-
NALE, LTD., Bankrupt.

Edgar H. BOOTH, Successor Trustee in
Bankruptcy of Cafes Internationale,
Ltd., Bankrupt, Plaintiff,

v.

MANUFACTURERS HANOVER TRUST
COMPANY, Swiss Bank Corporation,
New York Branch, the Chase Manhattan
Bank N.A., and Banco Sul Brasileiro
S.A., Defendants.

The CHASE MANHATTAN BANK, N.A.,
Third-Party Plaintiff,

v.

The CITIZENS & SOUTHERN NATION-
AL BANK, Third-Party Defendant.

Bankruptcy No. 72 B 580.

United States Bankruptcy Court,
S. D. New York.

July 30, 1981.

Simpson, Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co.; Henry Landau, New York City, of counsel.

Matthew F. Donohue, New York City, for the Chase Manhattan Bank, N.A.

Alston, Miller & Gaines, Atlanta, Ga., for Citizen's and Southern National Bank.

Booth, Lipton & Lipton, New York City, for Edgar Booth, successor Trustee; Edgar Booth, New York City, of counsel.

White & Case, New York City, for Swiss Bank Corp.; Burton T. Ryan, New York City, of counsel.

JOEL LEWITTES, Bankruptcy Judge.

This is an adversary proceeding[1] commenced by the successor trustee of the estate of this former Chapter XI[2] debtor, seeking to have declared and imposed the liabilities of the various defendants, following the unauthorized withdrawal of funds of the estate by the original trustee, who at the time of the filing of the complaint, was said to be residing in Brazil.

The facts underlying the litigation are, briefly, these: On March 23, 1973 Hans J. Auman was appointed trustee of the bankrupt estate. By order dated May 24, 1974 Auman was authorized to transfer $140,000 to a time certificate of deposit[3] at Manufacturer's Hanover Trust ("MHT"), a designated depository of this Court. The order provided that "said time certificate of deposit shall remain in the custody of the aforesaid bank for safekeeping, subject to the further order of this court". On June 20, 1977 MHT issued a check[4] in the amount of $141,680.97 to the order of "Hans J. Auman, TTEE in Bankruptcy of Cafe [sic] International [sic], Ltd". A few days later Auman negotiated the check with Swiss Bank Corporation ("Swiss") at their New York branch, requesting that the funds be credited to his personal account at Swiss' Zurich branch. Auman endorsed the check "Hans J. Auman, Ttee" and the typewritten notation "TTee in Bankruptcy of Cafe [sic] International [sic], Ltd." appears beneath the signature. Thereafter, Swiss endorsed the check and deposited it in Swiss' account with Chase Manhattan Bank, N.A. (Chase). Chase presented the check for payment and the monies were duly transferred by MHT.

While the transfer was being effected, Swiss reconsidered its original agreement to credit Auman's personal account. Instead, Swiss issued its own check, drawn on Chase, and mailed it to Auman in Frankfurt, West Germany. The payee was the same as on the MHT check. Auman deposited the Swiss check in Banco Sul Brasileiro, S.A. (Banco Brasileiro) in Rio de Janeiro, endorsing it, however, in his individual capacity only. The Brazilian bank presented the check to Chase for payment through the Citizen's and Southern Bank (C & S), and after Chase transferred the monies they were credited to Auman's personal account. Sometime thereafter, Auman was removed as trustee, and the Successor Trustee ("trustee") has now commenced suit against MHT, Swiss, Chase and the Brazilian bank.

## II

### The Trustee's Complaint[5]

The trustee has alleged four causes of action: the *first* cause of action alleges

---

1. An adversary proceeding, in the bankruptcy court, is commenced by the filing of a complaint, Bankruptcy Rule 703, 411 U.S. 1069, 93 S.Ct. 3147, 37 L.Ed.2d lxvi, and may be instituted, as here, to recover money and property. Bankruptcy Rule 701, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d lxvi.

2. On June 7, 1972, Cafes Internationale, Ltd. filed a petition pursuant to Chapter XI of the 1898 Bankruptcy Act, 11 U.S.C. § 701 *et seq.* and was adjudicated a bankrupt on March 23, 1973. Although the 1898 Bankruptcy Act has since been repealed, § 401(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2550, cases commenced under the 1898 Act continue to be "conducted and determined under such Act". *Ibid.* § 403(a).

3. "For our purposes there is no distinction between the principles applicable to demand or time deposits and certificates of deposits." *In re Quantum Development Corp.*, 534 F.2d 532, 534 n.2 (3d Cir.) *cert. denied, sub nom., First*

*National City Bank v. American Fidelity Fire Ins. Co.*, 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976). The funds held by MHT constituted a general deposit, see *In re George Mort Art Calendar Co.*, 78 F.2d 529, (6th Cir.) *cert. denied, Union Guardian Trust Co. v. Guardian Nat. Bank of Commerce of Detroit*, 296 U.S. 619, 56 S.Ct. 140, 80 L.Ed. 440 (1935), giving rise to a debtor-creditor relationship between the estate and the bank. See Michie, *Banks and Banking*, § 61 at n.58 (1973); But see *State v. Midland State Bank*, 52 Neb. 1, 71 N.W. 1011 (1897).

4. A second check in the amount of $25,000 was also misappropriated by Auman, but is not the subject of dispute, those funds having been restored to the estate by MHT.

5. The trustee has devoted a minimum of effort in substantiating either his theory of defendants' liability or his assertion that this Court has jurisdiction to resolve this proceeding.

improper and wrongful conduct by all of the defendants constituting a conversion of funds of the bankrupt estate; the *second* cause of action, directed solely against MHT, as a depository of the money of estates under the Bankruptcy Act, alleges a breach of MHT's duty as such designated depository resulting in a loss to the estate in the amount of $141,680.97 with interest; the *third* cause of action duplicates the first cause of action except that it is directed at the defendant banks other than MHT: and the *fourth* cause of action implicating defendants other than MHT, alleges that such defendants, as trustees *ex maleficio*, have breached their trust and are liable, therefore to the bankrupt estate.

The relief requested by the trustee, in his complaint, is a judgment on the above causes of action against the four defendants in the sum of $141,680.97 with interest from June 30, 1977 together with costs and disbursements.

### III

#### *Defendants' Responses*

MHT, Swiss and Chase each answered the complaint and cross-claimed against one another. Swiss and Chase also filed cross-claims against Banco Sul Brasileiro, S.A. and Chase further served a third party complaint upon C & S. Both C & S and Banco Brasilerio, filed motions to dismiss in lieu of an answer. On April 1, 1981, this Court

granted Banco Sul Brasileiro's motion to dismiss.

■ Swiss, in its answer, objected to the summary jurisdiction of this Court[6] and Chase has cross-moved to dismiss the complaint.

The underlying facts of this proceeding, not being in dispute, the trustee now moves for summary judgment against all of the named defendants. This motion is made pursuant to Bankruptcy Rule 756,[7] this Court's procedural mate of Fed.R.Civ.P. 56.

### IV

#### *Swiss' Objection To The Summary Jurisdiction Of This Court*

##### (a)

#### *Trustee's First And Third Causes Of Action Against Swiss*

■ The power conferred by the Bankruptcy Act of 1898 upon this Court to adjudge matters or proceedings before it, is commonly known as summary jurisdiction, or the power to act in summary fashion.[8] This essentially equitable,[9] but circumscribed jurisdiction, is limited to controversies relating to property over which this Court has actual or constructive possession[10] as well as to matters presented in the ordinary course of the administration of the estate.[11] Finally, summary jurisdiction may be exercised where a party is deemed

---

Presumably, his scant analysis was based on a laudable resolve to limit the cost of legal services to the bankrupt estate in a case where judgment against at least one of the named defendants is virtually assured. MHT, doubtless perceiving itself to be the most vulnerable to a finding of liability, has, in essence, taken up the trustee's contentions to the extent that they coincide with the cross-claims advanced by it.

**6.** An objection to the summary jurisdiction of this Court may be properly interposed either by answer or by motion. See § 2(a)(7) of the Bankruptcy Act 11 U.S.C. § 11(a)(7) (repealed).

**7.** 411 U.S. 1084, 93 S.Ct. 3159, 37 L.Ed.2d lxxii.

**8.** *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). The misleading and often pejorative connotation attached to the word "summary", used to describe this Court's jurisdiction, has been unfavorably commented upon in *In re Eastern Freightways, Inc.*, 13 C.B.C. 131, 135 n.6 (S.D.N.Y.1977) (Bankruptcy Court (Babitt, B. J.)).

**9.** *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

**10.** *Thompson v. Magnolia Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 629–30, 84 L.Ed. 876 (1940).

**11.** Bankruptcy Act § 2, 11 U.S.C. § 11 (repealed). See also *Pepper v. Litton, supra* 308 U.S. at 304, 60 S.Ct. at 244.

to have consented [12], or waived [13] its objection. Swiss, unlike its co-defendants who have waived any objections to summary jurisdiction by not so objecting in their answers,[14] has properly preserved its right to claim that this Court does not have summary jurisdiction to resolve the trustee's claims against Swiss. For that reason, Swiss seeks a dismissal of all causes of action pertinent to it.[15]

As described earlier, the first and third causes of action in the trustee's complaint allege that Swiss, *inter alia*, assisted in, or permitted, the misappropriation or conversion of estate funds which the trustee is entitled to by way of a turnover order. Swiss argues, in reliance upon the decisions in *In re Reading Engineering, Inc.*,[16] and *In re 671 Prospect Avenue Holding Corporation*,[17] that a suit seeking damages for unlawful conversion of property of the estate, may not be heard by the bankruptcy court in a summary proceeding.[18]

In the case of *In re Reading Engineering Inc.*, a landlord, ten months subsequent to the filing of a bankruptcy petition, commenced distraint proceedings for nonpayment of rent by the bankrupt, Reading Engineering, culminating in a sale of the bankrupt's machinery left on the premises. The landlord was the successful bidder. It appears that most of the machinery purchased at the sale was kept by the landlord on the premises where it was located prior to the sale. Thereafter, the bankruptcy

trustee commenced a summary proceeding in the bankruptcy court. The Court sustained the referee's determination that the trustee, by reason of the wrongful distraint proceedings and sale, was entitled only to recover, by summary fashion, the specific machinery remaining in the landlord's possession. The trustee, however, could recover the property removed from the landlord's possession, *i. e.* converted from the bankrupt's estate, only "in a proper proceeding".

Years later, in *In re 671 Avenue Holding Corporation*, our Court of Appeals interpreted that quoted phrase, "in a proper proceeding", to mean a plenary proceeding. In the later case, the defendant, East River Savings Bank, upon a foreclosure sale, transferred certain chattels of the bankrupt to a third party following a final determination by the Court of Appeals that the chattels were indeed secured by a mortgage. On reargument, however, the Court, in light of intervening state law which had been established with respect to the very mortgage at bar, reversed its prior ruling. Thereafter the trustee petitioned the bankruptcy court for an order permitting him to recover the value of the transferred property. The transferee was not made a party to this suit. In affirming the dismissal of the trustee's petition, the Court reasoned as follows:

"[T]he trustee does not seek a specific res formerly in the possession of the bankrupt or his trustee, nor does he seek to

**12.** *Cline v. Kaplan*, 323 U.S. 97, 99, 65 S.Ct. 155, 156, 89 L.Ed. 97 (1944).

**13.** Bankruptcy Act § 2(a)(7), 11 U.S.C. § 11(a)(7) (repealed). See also Bankruptcy Rule 915, 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxix. Contrast with "subject matter" jurisdiction in the United States District Court which may not be waived. *Maguire v. T.W.A., Inc.*, 403 F.Supp. 734, 743–44 (S.D.N.Y.1975).

**14.** See note 6, *supra*.

**15.** Swiss further seeks dismissal of trustee's fourth cause of action (alleging a breach of trust impressed, *inter alia* upon Swiss as a trustee *ex maleficio*) on the ground that it fails to state a cause of action. As discussed, *infra*, that contention bears, as well, on the reach of this Court's jurisdiction.

**16.** 29 F.2d 22 (2d Cir. 1928).

**17.** 118 F.2d 453 (2d Cir.), *cert. denied, sub nom. Newfield v. East River Savings Bank*, 314 U.S. 642, 62 S.Ct. 83, 86 L.Ed. 515 (1941).

**18.** For the proposition that any action for damages, generally, may not be brought in the bankruptcy court absent the consent of the defendant party, See *e. g. Hollywood National Bank v. Bumb*, 409 F.2d 23 (9th Cir. 1969); *In re Welded Construction, Inc.*, 339 F.2d 593 (6th Cir. 1964); But see *In re Mason C. Jones Co.*, 109 F.Supp. 843 (N.D.Ohio 1950); *In re Livingston*, 93 F.Supp. 173 (N.D.Cal.1950); *In re Scranton Knitting Mills Inc.*, 21 F.Supp. 227 (M.D.Pa.1937).

trace the proceeds of that res into other specific property in the possession of the respondent. Strictly speaking, he is not seeking to collect and bring into court some part of the bankrupt's estate; he is seeking to recover damages for a wrongful act that prevented him from bringing into the estate the property converted. A summary order enforceable by contempt is inappropriate when damages for tort are the matter in dispute." [19]

As stated earlier, the trustee here has framed his request for relief in terms of a turnover order. His allegations, in the first and third causes of action, however, clearly can be characterized only as seeking damages for conversion within the holding in *671 Prospect Avenue.* Accordingly, as to Swiss, these causes of action must be dismissed for lack of jurisdiction.

(b)

*Trustee's Fourth Cause Of Action Against Swiss*

The relief requested in the trustee's fourth cause of action, as it relates to Swiss, although similarly cast in terms of a turnover order, requires a different analysis and warrants a brief discussion of the nature of the turnover proceeding.

(1)

A turnover order is a judicially developed [20] procedure grounded in the Court's power to "make such orders . . . in addition to those specifically provided for, as may be necessary" [21] for the enforcement of the provisions of the 1898 Bankruptcy Act. Since the Court has the power to cause the assets of the estate to be collected [22], it may direct the turnover of property of the estate being withheld from the trustee. Where the party in possession has an adverse claim to the property which is substantial, or more than merely colorable, the Court lacks summary jurisdiction to determine the rights of the parties to the property [23], and a turnover order may not issue. Because this procedure is one directed primarily at property,[24] a turnover order should generally not issue against a party who is no longer in possession of the property sought to be recovered.[25] However, as noted in Collier on Bankruptcy,[26] decisional law has emerged, permitting exceptions to this latter rule of present possession, most often professing to follow, in this regard, the lead of the Supreme Court's decision in *May v. Henderson.*[27]

In that case, a debtor made a general assignment for the benefit of creditors to two assignees, one of whom was president of a bank [28] to which the assignor, who was subsequently adjudicated a bankrupt, was then indebted on a promissory note and with which the assignor maintained a deposit account. At the direction of the assignee who was president of the bank, monies were credited on the bankrupt's note, both before and after the filing of the bankruptcy petition. An action was thereafter commenced by the trustee of the bankrupt's estate against the two assignees seeking a recovery of the monies credited on the note. The bankruptcy court overruled the objection interposed to summary

---

**19.** *In re 671 Avenue Holding Corporation, supra* at 455.

**20.** *Maggio v. Zeitz,* 333 U.S. 56, 61, 68 S.Ct. 401, 404, 92 L.Ed. 476 (1948).

**21.** § 2(a)(15); 11 U.S.C. § 11(a)(15) (repealed).

**22.** § 2(a)(4); 11 U.S.C. § 11(a)(4) (repealed).

**23.** *Cline v. Kaplan, supra,* 323 U.S. at 98–99, 65 S.Ct. at 156.

**24.** *Maggio v. Zeitz, supra,* 333 U.S. at 63, 68 S.Ct. at 405.

**25.** *Id.* at 63–64, 68 S.Ct. at 405.

**26.** 2 Collier on Bankruptcy ¶ 23.10 at 570 n. 24 (14th ed. 1976). See also *Shapiro v. Royal Indemnity Co.,* 129 F.Supp. 54, 63–64 (W.D.Pa. 1954); *aff'd* 224 F.2d 89 (3d Cir. 1955); *In re Livingston,* 93 F.Supp. 173 (N.W.Cal.1950); *In re Scranton Knitting Mills,* 21 F.Supp. 227 (M.D.Pa.1937) (not citing *May v. Henderson* ); *In re Citizens Loan and Savings, Co.,* 5 B.R. 510 (Bkrtcy.W.D.Mo.1979).

**27.** 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925).

**28.** The Court expressly discounted the relevance to its holding, of the assignee's position as bank president. *Id.* at 120, 45 S.Ct. at 460.

jurisdiction and held that the trustee was entitled to an order directing the assignees to account and pay over funds received by them, as assignees. After a "mixed review" by the intermediate appellate courts,[29] the Supreme Court upheld the turnover order granted by the bankruptcy referee. Turning to the requirement that there be an identifiable res presently in the defendant's hands, the Court stated:

> "Nor is it any answer to such a proceeding that the diverted assets are no longer under the control of the assignees .... The duty of a fiduciary to account for property entrusted to his care is fulfilled by delivery of the property, but if he has put it out of his power to deliver it, he may nevertheless be compelled to account for its worth. [citation omitted]. He is subject to the summary order of the Bankruptcy Court to restore the property to the bankrupt's estate." [30]

More recently, the Fifth Circuit, claiming, at least, in part, consanguinity with *May v. Henderson*, upheld the validity of a turnover order issued against a party who concededly did not have possession of the specific property of the bankrupt. In *South Falls Corporation v. Rochelle*,[31] South Falls, a shopping center promoter through its "tool", a corporation organized and controlled by South Falls, transferred funds of the bankrupt estate to pay debts of the bankrupt which were guaranteed by South Falls. These transferred funds, were "in the sole possession and control of the Bankrupt on the date of bankruptcy or were received thereafter in the course of the rental operation of the [bankrupt] store." [32] Because the surrender of these funds, the bankrupt's property, to South Falls was clearly unauthorized, and since South Falls held no adverse claim thereto, the Court found that there could be "no serious question about summary jurisdiction." [33] Hav-

ing established this, the Court viewed South Falls' lack of possession of a specific res of the bankrupt, the misappropriated funds, as presenting not a jurisdictional issue, but rather a question relating to the form of relief, if any, available to the bankruptcy trustee.

The Court found that the trustee, under the authority of *May v. Henderson*, was entitled to an accounting from South Falls since "whatever control or possession it had of the corporate bankrupt's cash and bank account was that of and for the Bankrupt itself." [34] Moreover, the Court, creating a new exception to the rules limiting turnover proceedings,[35] further found a turnover proceeding to be appropriate since the imposition of a constructive trust upon the assets of South Falls was warranted.

The Court reasoned that South Falls' assets were increased to the extent that the bankrupt's funds were utilized to pay debts guaranteed by South Falls. The assets of South Falls saved by way of the misappropriation of the Bankrupt's funds, in the opinion of the Court, became "proceeds", and thus properly the subject of a turnover order. Since South Falls, on the basis of its conduct, became an involuntary vicarious fiduciary, all of its assets on hand, as of the date of the turnover order, were held to be available to satisfy such order.

The assumption of this Court's jurisdiction to determine the trustee's fourth cause of action, insofar as it is asserted against Swiss, can therefore be supported on the authority of either *May v. Henderson* or *South Falls Corporation v. Rochelle*.

▮▮▮ The trustee, in this cause of action, seeks to hold Swiss to all the duties and liabilities of a *trustee ex maleficio* on the strength of two decisions emanating

---

**29.** The District Court affirmed the order of the Bankruptcy Court and the Court of Appeals reversed the order of the District Court.

**30.** *May v. Henderson, supra* at 119, 45 S.Ct. at 460.

**31.** 329 F.2d 611 (5th Cir. 1964).

**32.** *Id.* at 616.

**33.** *Id.* at 616.

**34.** *Id.* at 617 (footnote omitted).

**35.** See p. 160, *supra*.

from the Courts of Appeals in the third[36] and Fourth Circuits.[37] Those cases held that a bank, such as Swiss, not a designated depository under § 61 of the Bankruptcy Act,[38] which accepts deposits of bankruptcy funds with notice of their character, can be held liable as a constructive trustee, for such funds. Since "[t]he standard of duty is no different whether the trust to be enforced is actual or [as here] constructive",[39] and because "[t]he implication of a trust is the implication of every duty proper to a trust",[40] Swiss can properly be ordered to account[41] in a summary proceeding.[42] Moreover, we are quite in accord with so much of the reasoning in *South Falls Corporation v. Rochelle supra*,[43] which supports the view that a constructive trust, properly imposed on a party's remaining assets[44] for its misappropriation of funds while in the custody of the court, may be enforced by a summary proceeding in the bankruptcy court.[45]

Having said this, there remains, however, for determination, whether, upon a preliminary inquiry,[46] the essential ingredients for the traditional exercise of summary jurisdiction are present in this proceeding.

■■■ An objection to this Court's summary jurisdiction must be sustained if we determine that there is a "real and substantial"[47] controversy "either in fact or law"[48] with respect to property held adversely to the estate. If we ascertain, however, that the adverse claim to the estate's property is "merely colorable the Court may then proceed to adjudicate the merits summarily...."[49]

**36.** *In re Quantum Development Corporation,* 534 F.2d 532 (3d Cir.), *cert. denied sub nom; First National City Bank v. American Fidelity Fire Insurance Co.,* 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976).

**37.** *American Surety Co. v. First National Bank,* 141 F.2d 411 (4th Cir.) *cert. denied,* 322 U.S. 754, 64 S.Ct. 1267, 88 L.Ed.2d 1583 (1944).

**38.** 11 U.S.C. § 101 (repealed). See also Bankruptcy Rule 512, 411 U.S. 1059, 93 S.Ct. 3140, 37 L.Ed.2d lxii, which, although applicable to this case, see 411 U.S. 991, 93 S.Ct. 3081, 37 L.Ed.2d xxxi, was not in effect when the cases of *In re Quantum Development Corporation, supra,* and *American Surety Co., supra,* were decided. See *In re Quantum Development Corporation, supra* at 536 n.9.

**39.** *Buffum v. Barceloux Co.,* 289 U.S. 227, 237, 53 S.Ct. 539, 543, 77 L.Ed. 972 (1933) (Cardozo, J.).

**40.** *Ibid.*

**41.** "It is well established that the proper method to secure such an accounting is by summary proceedings for a turnover order." *In re Scranton Knitting Mills,* 21 F.Supp. 227, 228 (M.D. Pa.1937) (citations omitted). See also *South Falls Corporation v. Rochelle, supra* at 619.

**42.** *May v. Henderson, supra* 268 U.S. at 120, 45 S.Ct. at 460; *Cf. Brooklyn Trust Co. v. Kelby,* 134 F.2d 105, 111 (2d Cir.), *cert. denied,* 319 U.S. 767, 63 S.Ct. 1330, 83 L.Ed. 1717 (1943) ("The exercise of the court's power to compel such an old trustee to restore trust assets, lost by its negligent conduct, concerns the res itself and is, therefore, *quasi in rem.* The claim for restitution is part of the estate within the court's jurisdiction; the old trustee's liability is as much a part of the res to be administered as any other part.") (citations and footnote omitted).

**43.** Note 31, *supra.*

**44.** Swiss does not argue that it has no assets to satisfy a turnover order. The issuance of such an order would therefore not create a "a duty impossible of performance" proscribed by *Maggio v. Zeitz, supra* 333 U.S. at 64, 68 S.Ct. at 405. This much is recognized in *May v. Henderson, supra* at 120, 45 S.Ct. at 460. See also *South Falls Corporation v. Rochelle,* 329 F.2d 611, 612–3 (5th Cir. 1964).

**45.** *Cf. Governor Clinton Co., v. Knott,* 120 F.2d 149, 152 (2d Cir.); *cert. dismissed* 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561 (1941) ("[s]ummary jurisdiction may be invoked for purposes other than to protect property within the actual or constructive possession of the court.... This amounts to a fraud and imposition upon the court itself; and in such cases the court undoubtedly has summary jurisdiction to protect itself and the interests of the persons and property within its custody".)

**46.** *Harrison v. Chamberlin,* 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897 (1926).

**47.** *Ibid.*

**48.** *Ibid.*

**49.** *Ibid.*

We have observed earlier [50] that absolute liability for subsequent misappropriation of bankruptcy estate funds attaches to non-designated depository banks who accept, for deposit, denominated bankruptcy funds. Swiss, seeking to convince this Court, however, that there generally exists a real and substantial adverse claim, in law, to the bankruptcy estate here, attempts to avoid such absolute liability by pointing out that it neither received estate funds for deposit nor permitted the withdrawal or deposit of such funds for the personal use of Auman, the defalcating trustee. We find this strained distinction, and accordingly Swiss' adverse claim, to be patently "colorable".

Swiss' change of heart, after it had initially agreed to credit Auman's personal account in Switzerland does not distinguish this proceeding from *In re Quantum* or *American Surety Co., v. First National Bank*, sufficient to dissuade us from finding summary jurisdiction here. Those cases clearly teach us that liability attaches "at the time of, and solely as the result of, the acceptance of funds" for deposit.[51] Indisputably, Swiss initially *accepted* the estate funds for deposit though it subsequently, but alas belatedly, sought to undo the consequences of its original act. Moreover, Swiss' deed, in effectuating the withdrawal of those funds from MHT, accomplished the reprehensible result that these bankruptcy estate funds were no longer secured by the necessary collateral or other undertakings required of designated depositories.

Neither are we persuaded that Swiss has demonstrated a real and substantial adverse claim because it did not permit the subsequent withdrawal or deposit of estate funds for Auman's personal use. Once a non-depository bank accepts designated bankruptcy estate funds, under the circumstances present here, such bank is liable for "all subsequent misappropriations of the funds" [52] whether or not it participates in the misappropriation.

■ Since Swiss' adverse claims therefore are demonstrably colorable, this Court has summary jurisdiction over Swiss and accordingly we overrule its objections thereto.

## V

*Trustee's First, Third, and Fourth Causes Of Action Against Chase.*

■ The trustee seeks to hold Chase liable under the following theory: the payee designation on the two checks [53] received by Chase for payment allegedly gave notice that they represented bankruptcy estate funds and imposed a duty upon Chase [54] to deal with such checks in accordance with the requirements of applicable bankruptcy statutes and rules. Accordingly the trustee argues, since former local Bankruptcy Rule 9 [55] applicable at the time, required that all withdrawals from bankrupt estate deposits be countersigned by a bankruptcy judge, Chase was duty bound not to accept or honor either of the two checks. Moreover, the trustee complains, Chase should have inquired into Auman's endorsement as an individual, rather than as a fiduciary, on the second check, the one drawn by Swiss.

---

**50.** *See In re Quantum Development Corporation, supra* note 36 and *American Surety Co. v. First National Bank, supra* note 37.

**51.** *In re Quantum Development Corporation, supra* at 537.

**52.** *Ibid.*

**53.** The first check was MHT's check which Auman gave to Swiss on June 22, 1977 and which check Chase, as Swiss' designated clearing house bank, presented to MHT for payment. The second check, was Swiss' check drawn on Chase and issued on July 6, 1977 as a

late attempt, by Swiss, to revoke the June 22 deposit. Chase eventually honored this second check as drawee bank.

**54.** Although Chase is a designated depository of funds of bankrupt estates in the Southern District of New York, it is not the depository selected by the Auman, the former trustee, for the deposit of funds of the instant estate.

**55.** The local Bankruptcy Rules have since been abrogated by order dated December 17, 1979.

In support of the trustee's theory of liability, in this respect against Chase, MHT [56] and the trustee cite a plethora of cases, all factually distinguishable from the proceeding at bar, in that they involved situations where a bank dealt *directly* with a fiduciary and hence with the funds of the *cestui que trust*. However, in this proceeding, Chase dealt only with Swiss and Swiss' funds. Although Swiss, as a non-designated depository, accepted estate funds 'impressed with [a] trust' [57], when it deposited the first check in its account with Chase, that deposit created nothing more than a debtor-creditor relationship between Swiss and Chase,[58] with title to the money passing to Chase.

Moreover, state law, to the extent it is applicable here, exculpates Chase from liability in the present circumstances. Thus the New York Uniform Commercial Code provides that

"an intermediary bank or payor bank [such as Chase] which is not a depository bank is not liable in conversion solely by reason of the fact that proceeds of an item endorsed restrictively (Sections 3–205 and 3–206) are not paid or applied consistently with the restrictive endorsement of an endorser other than its immediate transferor. . . ." [59]

As stated by the New York Court of Appeals in *Underpinning and Foundation Constructors v. Chase* [60] the Uniform Commercial Code

"places liability solely upon the bank which first takes the check with the restrictive endorsement. This was done in the belief that it is that bank which is in the best position to ensure that the restriction is satisfied. Subsequent banks were thus relieved of responsibility to prior endorsements." [61]

We discern no useful policy that would be served by requiring Chase, as an intermediary bank, to deal with the checks here in a manner different from any other checks received by it from Swiss. As noted earlier, Swiss was burdened with the duty to inquire as to the denomination of, or restriction upon funds it received, to ensure compliance with applicable statutes and rules. We do not perceive, however, any concomitant burden on Chase to review the actions of the miscreant trustee, a party with whom Chase had no contact. Rather, under the circumstances here, Chase could properly depend upon Swiss to inquire into the propriety of the latter's receipt of MHT's check for deposit.

Moreover, under state law, Chase is not bound to inspect restrictive endorsements other than those made by its immediate, transferor, Swiss.[62] Since checks involving bankruptcy funds almost certainly constitute only a miniscule fraction of Chase's check traffic, even if we were to fashion a more stringent rule than state law [63] there

---

**56.** See note 5, *supra*.

**57.** *In re Potell*, 53 F.2d 877, 880 (E.D.N.Y.1931).

**58.** *Leach v. First National City Bank*, 206 Iowa 265, 267, 217 N.W. 865, 868 (1928).

**59.** *N.Y. Uniform Commercial Code* § 3–419(4) (McKinney). Under N.Y. Uniform Commercial Code § 4–105(a) and (b) made applicable to Article 3 of that Code by § 3–102 thereof, Chase would be considered a "payor bank which is not a depositary bank".

Although the statute speaks in terms of a restrictive endorsement, the same principle is applicable here where the restriction is on the payee designation.

**60.** 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979).

**61.** *Id.* at 467, 414 N.Y.S.2d 298, 386 N.E.2d 1319. (citations omitted).

**62.** See N.Y. Uniform Commercial Code § 3–206(2) (McKinney) which provides that: "An intermediary bank or a payor bank which is not the depository bank is neither given notice nor otherwise affected by a restrictive endorsement of any person except the bank's immediate transferor or the person presenting for payment."

**63.** See *American Surety Co. v. First National Bank*, supra at 416–18 for the proposition that federal courts should formulate standards governing liability with respect to the deposit and collection of checks representing bankruptcy funds. Query whether the inspection, by intermediary banks, of restrictive endorsements covering bankruptcy funds implicates " 'uniquely federal interests' of the kind that oblige [federal] courts to formulate federal common law." *Texas Industries, Inc. v. Radcliff Materials*, —— U.S. ——, ——, 101 S.Ct. 2061, 2068, 68 L.Ed.2d 500 (1981).

would be no economic impetus on Chase's part to alter its present in-house procedures to comport with such rule.

We conclude from the foregoing that there is no basis in law for holding Chase liable to the trustee. Accordingly, the trustee's complaint, as to Chase, is dismissed for failure to state a cause of action.

## VI

### Trustee's First And Second Causes Of Action Against MHT

■ MHT's liability to the trustee for the diverted funds, on the basis of the undisputed facts, is clear and convincing.

The issuance of MHT's check to Hans Auman, albeit payable to him in his fiduciary capacity, is acknowledged by MHT to have been in contravention of this Court's order which authorized the original deposit of estate funds with MHT. MHT nevertheless argues, in the nature of a confession and avoidance, that such violation by it of the Court order did not damage the estate. Rather, it asserts, Auman's embezzlement "resulted from the superceding acts of Swiss and Chase which caused the loss to the . . . . estate." [64]

While it is certainly true that Auman's embezzlement would not have succeeded but for the negligence of others, it is equally certain that without MHT's violation of the order of this Court, Auman would never have been able to take advantage of that negligence.

The requirement in the Court order that certificates of deposit be held "subject to further order of this Court" was patently intended to obviate the possibility of a fidu-

ciary's defalcation or unauthorized withdrawal of estate funds. When MHT issued its check to Auman, without Court authorization therefor, MHT frustrated the Court's unquestioned right and capacity to monitor funds in *custodia legis*. The conclusion is inescapable that MHT must be held liable for the loss to the estate which might otherwise have been avoided.

## VII

### The Cross-Claims [65] and Third Party Complaint

#### (A)

#### Chase

■ Both MHT and Swiss have cross-claimed against Chase premised on theories of contribution or implied indemnity.[66] A recovery under either theory, however, requires a finding of wrongdoing on the part of the party from whom recovery is sought.[67] Since we have determined that Chase committed no compensable wrong, it cannot be held accountable to either MHT or Swiss.

As an independent ground of recovery, not assertable by the trustee, MHT, in its cross-claim, alleges that Chase breached certain warranties to MHT upon presentation of the MHT check to MHT for collection. In particular, it is claimed that Chase breached its warranty that it was receiving proceeds of the check for the bankruptcy estate and was applying the proceeds to the estate.

New York Uniform Commercial Code § 4–207 sets forth the statutory warranties applicable here. However, the warranty claimed by MHT is not among those im-

---

**64.** MHT's Memorandum of Law on motion for dismissal of cross-claims of, and summary judgment against, Swiss Bank and Chase, p. 3.

**65.** Summary jurisdiction over the parties having been established, *supra,* this Court has jurisdiction over the subject matter of the cross-claims. See *Bryan v. Bernheimer,* 181 U.S. 188, 198, 21 S.Ct. 557, 560–61, 45 L.Ed. 814 (1901).

**66.** "While the case law with respect to indemnity and contribution has not been a model of

clarity," *Taylor v. G.I. Export Corp.,* 78 F.R.D. 494, 496 (E.D.N.Y.1978), generally the principle of indemnification serves to shift the entire burden from one defendant to another, whereas contribution serves to share the burden among the defendants. *Wassel v. Eglowsky,* 399 F.Supp. 1330, 1365–6 (D.Md.1975), *aff'd* 542 F.2d 1235 (4th Cir. 1976).

**67.** *Taft v. Shaffer Trucking Inc.,* 52 A.D.2d 255, 383 N.Y.S.2d 744 (4th Dept. 1976).

posed by the Code. While the Code warranties may be supplemented,[68] we find neither a precedent establishing the one claimed here by MHT between banks in the collection process, nor any valid reason to impose such a warranty as a matter of law. Accordingly, the cross-claims against Chase must be dismissed.

Chase's third party complaint against Citizen's and Southern Bank, requesting relief in the event that Chase is found accountable to any third-party in this action must therefore be dismissed, as well.

### (B)

### *MHT And Swiss*

MHT and Swiss have filed cross-claims for contribution against each other and MHT, in this regard, has moved for summary judgment.

■ New York law, which governs claims for contribution here, provides that "two or more persons who are subject to liability for damages for the same . . . injury to property[69] . . . may claim contribution among them. . . ."[70] If it be determined, as here, that the defendants MHT and Swiss are liable to the plaintiff for the same injury, it matters not that they are liable on distinctly different theories of recovery.[71]

Although we are, of course, aware that relative responsibility should "be determined on the facts"[72] normally requiring a trial or evidentiary hearing,[73] where, as here, neither the Court nor any of the parties discern that there are any additional facts to be presented in this regard, this Court, on the record before it, apportions 75% of the liability against MHT and 25% against Swiss.

From the foregoing, we reach the following conclusions:

A. The Trustee's Motion for Summary Judgment.

(a) against MHT is granted, in all respects;

(b) against Chase is denied, in all respects and the trustee's complaint against Chase is dismissed;

(c) against Swiss, with respect to the trustee's first and third causes of action, is denied and these two causes of action are dismissed for want of summary jurisdiction; on the fourth cause of action against Swiss, summary judgment is granted.

B. Cross-claims by MHT and Swiss against Chase, are dismissed.

C. Chase's Third Party complaint against Citizens and Southern Bank is dismissed.

D. Cross-claims by MHT and Swiss against one another and MHT's motion for summary judgment against Swiss:

This court apportions liability as follows: 75% against MHT; 25% against Swiss.

---

**68.** N.Y. *Uniform Commercial Code* § 1–103 (McKinney).

**69.** The phrase 'injury to property' has been held to include "any tortious act (other than personal injury) resulting in damage." *Lippes v. Atlantic Bank of New York*, 69 A.D.2d 127, 141, 419 N.Y.S.2d 505 (1st Dept. 1979).

**70.** N.Y. *Civil Practice Law and Rules* § 1401 (McKinney).

**71.** N.Y. *Civil Practice Law and Rules* § 1401 (McKinney), Practice Commentary at 363.

**72.** *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 153, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) *cited in Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975).

**73.** *Cf. Santomassino v. United States*, 157 F.Supp. 826, 827–8 (motion to dismiss third party complaint).