**DLH, INC., Appellant,**

v.

**David A. RUSS, Mark Cohn, et al., Respondents.**

**No. C2–95–1218.**

Court of Appeals of Minnesota.

March 5, 1996.

Gordon B. Conn Jr., Jerry W. Snider, Charles F. Webber, Faegre & Benson P.L.L.P., Minneapolis, for appellant.

David R. Marshall, Terri A. Georgen, Fredrikson & Byron, P.A., Timothy D. Kelly, Wendy A. Snyder, Kelly & Berens, P.A., Minneapolis, for respondents.

Considered and decided by NORTON, P.J., and LANSING and FORSBERG *, JJ.

## OPINION

NORTON, Judge.

Appellant contends the district court erred in granting summary judgment to respondents in this action over corporate shares of stock in a bankruptcy estate. Although we view some claims with skepticism, we see no genuine issue of fact on this record or under applicable law. The district court properly ruled that appellant has no enforceable rights to the stock at issue and, therefore, has no claim for conversion. We affirm.

## FACTS

This action involves a dispute over title to 1.54 million shares of Damark International stock. Respondents David Russ and Mark Cohn incorporated Damark International, Inc., on March 20, 1986. Cohn served as Damark's CEO; David Russ was the senior manager. At the time of incorporation, David Russ obtained no shares of Damark stock; 400 shares of stock were issued to Cohn and another 400 were issued to Ruwest Company, a sole proprietorship owned by Diane M. Russ, wife of David Russ.

At the outset, Damark struggled financially. In December 1986, independent investor

Ron Wade purchased 342 shares of Damark stock. By March 1987, Wade sold out of the company, having suffered a loss of $120,000. The record is undisputed that by mid-1987, 400 shares of Damark stock had "nominal value." Damark lost $47,121 in 1986 and $111,803 in the first quarter of 1987.

On April 30, 1987, Diane Russ, on behalf of Ruwest, sold her 400 shares of stock to Cohn for $1,000.

On July 10, 1987, David Russ filed a petition for personal bankruptcy under Chapter 7 of the United States Bankruptcy Code. In addition to other business debts, Russ had at least $300,000 of personally-assumed debt from International Rubber Supply, Inc., a company he had operated and then closed because of financial difficulty. Russ's bankruptcy application and statement of financial affairs did not list his ownership of any Damark stock. The accuracy of this representation is in dispute. Russ obtained a bankruptcy discharge in October 1987.

In January 1988, Cohn transferred 400 shares of Damark stock to Russ as an incentive for him to build and develop Damark's business. In April 1988, Russ and Cohn negotiated a $2.5 million line of credit for Damark. Over the next few years, Damark grew substantially, was recapitalized several times, and received greater lines of credit through institutional lenders. When Russ left Damark in March 1991, his 400 shares of stock had split several times to become 1.54 million shares of Damark common stock.

In August 1993, Kevin Lamson obtained an order reopening Russ's bankruptcy case. Lamson describes himself as a "bottom feeder" who purchases judgments, notes, mortgages, and bankruptcy claims at substantial discounts in order to obtain collection on the debts and gain a windfall. Lamson, together with Neil Dolinsky and Bruce Hendry, formed appellant DLH, Inc., which, on March 16, 1994, paid the bankruptcy trustee $350,000 for a quit claim deed to the trustee's interest in Damark stock. DLH understood

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

this interest to include the 1.54 million shares that Russ had owned before he disassociated himself with Damark. When Damark refused to transfer the shares, DLH brought this action for conversion, seeking delivery of the stock or a $46,200,000 judgment.

The district court granted summary judgment in favor of Russ, Cohn, and Damark, reasoning that DLH had not purchased any rights to Damark stock, because the stock had not been part of the bankruptcy estate. As an alternate basis for summary judgment, the district court held that DLH's claims were barred by the statute of limitations. The district court also denied DLH's motion to amend the complaint and, later, to amend the judgment. On appeal, DLH challenges only the ruling on the statute of limitations and has not developed its fraud argument by brief or oral argument on appeal.

## ISSUES

I. Does DLH have a valid conversion claim against respondents?

II. Did the district court err when it determined that the statute of limitations had expired on DLH's claims and was not tolled by Russ's alleged fraudulent transfer?

## ANALYSIS

■ When reviewing summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992).

### I. DLH's conversion claim

■ Before addressing the statute of limitations question, we must first evaluate whether DLH has a valid conversion claim that could have accrued at some time.

DLH contends either that Damark converted the stock when it failed to transfer the shares to DLH or that Russ converted the stock when he sold it prior to his bankruptcy. Under either theory, DLH claims Russ had

actually received 400 shares of stock when he and Cohn formed Damark, despite the fact the shares were technically in Ruwest's name. For purposes of this review, we will view the facts in favor of DLH and assume that Russ owned that stock. *Wartnick,* 490 N.W.2d at 112 (requiring reviewing court to view facts in light most favorable to party against whom summary judgment granted). The determinative factor in this case, then, is the status of that stock when Russ filed bankruptcy.[1]

■ When a bankruptcy case is opened, all the debtor's property, "wherever located and by whomever held," becomes part of the bankruptcy estate. 11 U.S.C. § 541(a) (Supp.1987). The bankruptcy code defines the property of a bankruptcy estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1982). Property titled to another may be included in a debtor's bankruptcy estate if the property had been held out as the debtor's property and other indicia of ownership suggest the debtor was the equitable owner. *In re Kaiser,* 791 F.2d 73, 77 (7th Cir.1986), *cert. denied* 479 U.S. 1011, 107 S.Ct. 655, 93 L.Ed.2d 710 (1986).

Assuming that the 400 shares in Ruwest's name actually belonged to Russ, the record shows that Ruwest, or Russ, sold those shares to Cohn on April 30, 1987, two and one-half months before Russ filed bankruptcy on July 10, 1987. Thus, the stock did not become part of the bankruptcy estate, because it was not in Russ's possession at the time he filed the bankruptcy petition. 11 U.S.C. § 541(a) (property of bankruptcy estate is all debtor's property at time of bankruptcy).

Because that stock was not part of the bankruptcy estate, DLH has no basis for its conversion claim. The claim that Damark converted the stock by failing to transfer it to DLH fails because of impossibility; the bankruptcy estate contained no stock for Da-

---

1. We note that DLH has misinterpreted the district court's May 31, 1995 order to find that Russ owned the Damark stock at the time he filed bankruptcy. The court simply reiterated that, in viewing the facts in a light most favorable to DLH, it had considered Russ initially to be "the true owner of the stock" held by Ruwest.

**330**

mark to convert. DLH's alternate claim that Russ converted the stock when he sold it prior to bankruptcy also fails.

DLH would only have such a cause of action for conversion if the bankruptcy trustee had that cause of action available to him. *See State of Wis. ex rel. Southwell v. Chamberland,* 361 N.W.2d 814, 818 (Minn.1985) (explaining that assignee, who receives full title and interest, stands in assignor's shoes and has the same right, title, or interest that assignor had in assigned property). The bankruptcy trustee inherited rights to all of Russ's property. In order for the trustee to have had a conversion claim, Russ would have had to have had a conversion claim. But the alleged claim would be against Russ, himself, for having sold the Damark stock to Cohn before the bankruptcy. Russ could not sue himself for conversion. Consequently, neither could the trustee have sued him for conversion. Because the trustee did not have the right to bring a conversion claim, neither does DLH.

We agree with the district court that the only viable cause of action here was for the trustee to raise a fraudulent transfer claim to reclaim property for the bankruptcy estate. *See* 11 U.S.C. § 548(a) (Supp.1987) (giving trustee power to "avoid" improper transfers of debtor's property through "fraudulent transfer" action). With such an action, a trustee may reclaim any improper transfer made within one year prior to the filing of the bankruptcy petition. *Id.* A trustee may take this action if the debtor voluntarily or involuntarily made the transfer with "actual intent to hinder, delay, or defraud" any creditors, or received less than a reasonably equivalent value for the transfer, or if the debtor was insolvent before or as a result of the transfer. *Id.* (a), (b). The trustee could have brought a fraudulent transfer action within two years after appointment or before the case was closed, whichever came first. 11 U.S.C. § 546(a) (Supp.1987).

■ The facts in the record give good reason to suspect that the absence of Damark stock in Russ's bankruptcy estate may have been the result of a fraudulent transfer that could have involved Russ, Diane Russ, Ruwest, and Cohn. The trustee, however, brought no fraudulent transfer action. DLH claims it now may stand in the trustee's shoes to bring this action. We disagree. Unlike rights to property in the estate, the power to bring a fraudulent transfer action is reserved for the trustee and is not assignable to DLH. *In re Sinder,* 102 B.R. 978, 982 (Bankr.S.D.Ohio 1989) (bankruptcy trustees' power to avoid fraudulent transfers is part of "arsenal" Congress has given them to fulfill their duties; courts have "unwaveringly" protected these powers for trustees alone and have foreclosed other parties' attempts to appropriate them to themselves).

■ We consider it significant that DLH has not pleaded fraud in this case. The complaint alleges only conversion and replevin and requests declaratory judgment and injunctive relief. The statement that ownership of the Damark stock "had been previously concealed by * * * Russ at the time of his filing [bankruptcy] * * *" is not sufficient to plead fraud. The dissent finds grounds for reversal of summary judgment in the district court's denial of the motion to amend the complaint to include fraudulent concealment. We note that DLH has not challenged the denial of the amendment to the complaint on appeal. We must assume that DLH has waived the issue on appeal when it has failed to argue the issue in its briefs. *Balder v. Haley,* 399 N.W.2d 77, 80–81 (Minn.1987).

■ DLH also contends that it has inherited the trustee's right to raise a turn-over claim against Russ, a claim that has no statute of limitations. *See* 11 U.S.C. § 542(a) (1982) (requiring anyone in possession of bankruptcy estate property to turn it over to trustee). By its own language, this section refers to property that belongs in the bankruptcy estate; "the property being sought is clearly the property of the Debtor, but not in the Debtor's possession." *In re FLR Co.,* 58 B.R. 632, 634 (Bankr.W.D.Pa.1985). In this case, however, the Damark stock was not part of the bankruptcy estate, because Russ sold it prior to filing bankruptcy.

■ In addition, a turnover is not proper when, as here, the party in possession of the property has a substantial claim adverse to

the estate and the court's order would essentially determine the parties' rights to the property. *In re Cafes Internationale, Ltd.,* 13 B.R. 155, 160 (Bankr.S.D.N.Y.1981). Cohn and Damark have asserted substantial rights to the stock at issue here, in opposition to DLH. A turnover order would essentially have determined one party's rights to the stock over another's, and, consequently, would be improper here. *Id.* The appropriate remedy here would have been a fraudulent transfer action, not a turnover claim.

This record supports the district court's determination that:

> [N]o such cause of action [for fraudulent transfer] is now before this court. Therefore, because the Trustee doesn't have a cause of action for replevin or conversion, and [DLH] has no greater standing than the Trustee, the [respondents'] motion for summary judgment is granted.

DLH has no viable conversion claim because the trustee had no such claim against Russ. Because this conversion claim is invalid, and DLH raised no fraud claims, summary judgment was proper for Russ, Cohn, and Damark. For the record, we note that DLH has not challenged this ruling of the district court, but has only challenged its ruling on the statute of limitations, which was an alternate basis for summary judgment.

## II. Statute of limitations and the tolling question

In challenging the district court's alternative basis for summary judgment, DLH argues that Russ's alleged fraudulent concealment of the stock tolled the statute of limitations and raised issues of fact that preclude summary judgment.

Fraudulent concealment "tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect." *Buller v. A.O. Smith Harvestore Prods.,* 518 N.W.2d 537, 542 (Minn.1994) (quoting *Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 918 (Minn.1990)). Once the plaintiff has notice of a potential cause of action for fraud, he or she must investigate with reasonable diligence. *Id.* "Reasonable diligence is generally a question of fact." *Appletree Square I*

*Ltd. v. Investmark, Inc.,* 494 N.W.2d 889, 894 (Minn.App.1993), *review denied* (Minn. Mar. 16, 1993).

DLH contends that the record contains questions of fact about what the trustee knew and did not know and what he did and did not do. Whether the trustee was diligent in discovering any fraudulent transfers, DLH argues, is a question for the jury to determine. *Id.*

Although DLH correctly presents the law, this argument is not persuasive for two reasons. First, DLH again alleges fraud, despite the fact that it did not plead fraud in its complaint. Second, the success of this issue hinges on our decision on the conversion issue. Statutes of limitations are based upon legal claims. Even if the tolling question had gone to a jury and had resulted in a court ruling that the statute of limitations on the conversion claim should have been tolled, we have already determined that DLH has *no* valid claim for conversion. Without a valid underlying claim for conversion, and no claim for fraud, the statute of limitations issue and the tolling issue are moot for purposes of our review.

## DECISION

The district court properly determined that DLH has no valid conversion claim. Without a valid underlying claim, the statute of limitations and tolling questions are moot. The district court properly granted summary judgment to Russ, Cohn, and Damark.

**Affirmed.**

LANSING, Judge (dissenting).

The majority opinion analyzes the issues too narrowly. DLH appealed from a judgment that both granted summary judgment on the existing claims and denied DLH's motion to amend the complaint to add a claim of fraudulent concealment. The district court concluded that DLH's fraudulent concealment claim was limited by the bankruptcy trustee's failure to exercise reasonable diligence. But whether a party used reasonable diligence to investigate a fraudulent concealment is a question of fact. *Wittmer v. Ruegemer,* 419 N.W.2d 493, 498 (Minn.1988).

When filing for bankruptcy, Russ had an affirmative duty to disclose all his assets. 11 U.S.C. § 521(1) (1994) (debtor must file "a schedule of assets and liabilities * * *."). The bankruptcy trustee's reasonable diligence must be assessed in the context of Russ' required disclosure. *See In re Pomaville,* 190 B.R. 632 (Bankr.D.Minn.1995) (reasoning that trustee must rely on bankruptcy debtor's disclosures).

The evidence supporting the fraudulent concealment claim creates a material fact question, which would also toll the statute of limitations. *See Buller v. A.O. Smith Harvestore Prods.,* 518 N.W.2d 537, 542 (Minn. 1994) (fraudulent concealment tolls statute of limitations). The magnitude of Damark's increased sales, the various transfers of stock, and the timing of Russ' bankruptcy filing demonstrate sufficient evidence of fraudulent concealment of assets to withstand summary judgment. In 1986 Damark reported sales of $1,330,777. In 1987, the year Russ filed for personal bankruptcy, Damark's sales were $4,852,000. At the very least, the unascertained value of the Damark stock at the time Russ filed for bankruptcy presents a question of material fact. If any doubt exists whether a genuine issue of material fact remains, the doubt must be resolved by denying summary judgment. *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). Other obstacles besides the statute of limitations may impede or limit DLH's ultimate recovery, but DLH should have the opportunity to develop its claim. *See In re Sinder,* 102 B.R. 978, 982–83 (Bankr.S.D.Ohio 1989) (dismissing single creditor's fraudulent transfer claim when bankruptcy trustee had already fully investigated and declined to bring such an action). Because the majority opinion prematurely narrows full consideration of material fact issues, I would reverse the summary judgment.